CAGGIANO ET AL., APPELLANTS, *v.* MEDTRONIC, INC., APPELLEE.

(No. 86AP-1170—Decided April 12, 1988.)

*Burman, Robinson & McCarthy Co., L.P.A., Dennis McCarthy* and *Leonard C. Elder,* for appellants.

*McNamara & McNamara, John L. Miller* and *David S. Cooper,* for appellee.

YOUNG, J. Appellant, Viola F. Caggiano, has had a history of medical problems, including problems with her heart. Her first cardiac pacemaker implant took place in 1968. Pacemaker generators must be replaced periodically and appellee Medtronic, Inc.'s cardiac pacemaker generator, Model 5976, was implanted into appellant's chest in December 1981. Appellant experienced difficulties, dizziness, etc., and sought help from her cardiologist. Her cardiologist, through a surgical process, found that the generator was operating properly. He reattached the generator and implanted new leads. During or soon after this surgery, appellant contracted an infection and the pacemaker Model 5976 was removed. A fourth pacemaker was inserted and appellant's condition improved dramatically.

Appellants filed this strict products liability suit alleging that the Med-

tronic SX-HT No. 5976 pacemaker was defective. Medtronic filed a motion *in limine* to exclude appellants' Exhibit No. 34 and the testimony of appellant's attending physicians, Drs. Morant and Cavin. On the basis of Evid. R. 407, appellee's motion *in limine* was granted. During appellee's case-in-chief, appellants deleted any reference to Exhibit No. 34 and asked the court to admit the remaining testimony of appellant's physicians as rebuttal testimony. The trial court refused to admit this rebuttal testimony and subsequently the jury returned a verdict in favor of Medtronic.

Appellants filed a motion for a new trial based on the trial court's rulings on the exclusion of evidence. The trial court denied the motion for a new trial. Appellants have filed this appeal.

Appellants assert the following assignments of error:

"I. The trial court erred in excluding plaintiff's Exhibit No. 34 and the direct testimony of Dr. Morant and Dr. Cavin on the basis of Rule 407 of the Ohio Rules of Evidence.

"II. The trial court erred in excluding the rebuttal testimony of plaintiffs' experts, Dr. Cavin and Dr. Morant on the basis of Rule 407 of the Ohio Rules of Evidence."

Appellants assert in the first assignment of error that the trial court erred in excluding appellants' Exhibit No. 34, an advisory letter dated March 10, 1982 from appellee, Medtronic, Inc., to doctors who had inserted its product, the SX-HT Model 5976 pulse generator, into patients. Evid. R. 407 states as follows:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

The rationale which initially precipitated the need for this rule was that evidence of subsequent repairs was completely irrelevant to the issue of a defendant's negligence at the time of the accident. It is the facts and circumstances that precede an accident which are relevant to establish the negligence of a defendant, whereas the facts and circumstances subsequent to the accident are irrelevant. Courts and legislatures have frequently retained this rule since to do otherwise may deter individuals from making improvements or repairs after an accident has occurred. However, the foregoing rationale and public policy concerns may or may not be valid when the typical negligence setting is transformed to the modern-day developments in the area of products liability. The policy reasons for implementing a rule like Evid. R. 407 may or may not be applicable to a case involving strict liability. First, a subsequent remedial measure is not an admission and cannot be used as such; second, public policy encourages manufacturers to take steps to implement remedial measures. However, given the differences between negligence and strict liability cases, it is unrealistic to assume that a manufacturer will forgo making improvements simply because evidence of adoption of such improvement may be admitted in an action founded on strict liability. Thus, in the products liability area, the purpose of Evid. R. 407 is not applicable to the conduct of the mass producer and merely serves as a shield against potential liability.

In *Ault* v. *Internatl. Harvester Co.* (1975), 13 Cal. 3d 112, 117 Cal. Rptr. 812, 528 P. 2d 1148, Justice Mosk stated the following:

"* * * It has been pointed out that not only is the policy of encouraging repairs and improvements of doubtful validity in an action for strict liability since it is in the economic self interest of a manufacturer to improve and repair defective products, but that the application of the rule would be contrary to the public policy of encouraging the distributor of mass-produced goods to market safer products. (Note, Products Liability and Evidence of Subsequent Repairs, 1972, Duke L.J. 837, 845-852.)" *Id.* at 120, 117 Cal. Rptr. at 817, 528 P. 2d at 1152.

In 1976, the Supreme Court of Ohio redrafted Evid. R. 407 and presented it to the state legislature. The proposed Evid. R. 407 included a statement that "this rule shall not be interpreted to exclude evidence of a subsequent measure when offered in cases involving circumstances of strict liability." 49 Ohio Bar 937 (1976). In essence, this statement incorporated the holding of the *Ault* decision. However, in its final form, Evid. R. 407 was subsequently adopted and the statement which incorporated the *Ault* decision was deleted. See Giannelli, Strict Liability (1976), 49 Ohio Bar 937, Section 407.05; see, also, 51 Ohio Bar 188 (1978).

The issue of whether Evid. R. 407 is applicable to a case involving strict liability has yet to be decided by the Supreme Court of Ohio. However, there are two parallel situations which have been presented to two other courts of appeals. In one case, the Ninth Appellate District affirmed a trial court's decision to exclude evidence of a design change based on the principle embodied in *LaMonica* v. *Outboard Marine Corp.* (1976), 48 Ohio App. 2d 43, 2 O.O. 3d 32, 355 N.E. 2d 533. See *Prickett* v. *Goodyear Tire & Rubber Co.* (Sept. 18, 1985), Summit App. No. CA 12008, unreported. However, the *LaMonica* decision, relied upon by the *Prickett* court, may not be determinative of the facts before this court since the *LaMonica* decision was rendered before the revised Evid. R. 407 was adopted in 1977.

The issue was also presented before the Twelfth Appellate District in the case of *Freeman* v. *Beech Aircraft Corp.* (Sept. 30, 1983), Butler App. Nos. 80-11-0119, 80-11-0120 and 80-11-0121, unreported. The *Freeman* case involved a products liability claim for wrongful death as a result of an airplane crash. In that case, the appellants' assignment of error asserted that the trial court erred in refusing to admit a report, issued after the accident, which discussed the revised recommended engine speeds. The *Freeman* court held:

"Though the language of Evid. R. 407 limits its application to negligence cases, we see no persuasive reason why the rule against admitting subsequent remedial efforts should not be applied to a case tried under [2 Restatement of the Law 2d, Torts (1965)] § 402A. This holding is consistent with both the legislative history of the rule and its underlying policy."

The Supreme Court has recognized that in order for a claimant to prove that a product is defective, he must demonstrate that the product was defective at the time the manufacturer sold the product. *Knitz* v. *Minster Machine Co.* (1982), 69 Ohio St. 2d 460, 23 O.O. 3d 403, 432 N.E. 2d 814; *State Auto. Mut. Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151, 65 O.O. 2d 374, 304 N.E. 2d 891. The facts before this court reveal that on December 10, 1981, appellant had a Medtronic SX-HT Model No. 5976 cardiac pacemaker implanted into her chest. Conclusively, the pacemaker was sold to and bought by appellant on or before this date. Therefore, this court must consider whether the doctors' advisory letter is relevant to appellants' burden of proof in demonstrating that the pacemaker implanted

into appellant's chest was defective at the time when it was sold to her. However, even if the doctors' advisory letter is relevant, the trial court found the letter to be inadmissible based upon Evid. R. 407. The doctors' advisory letter, Exhibit No. 34, states in pertinent part:

"* * * In mid-January, Medtronic received two (2) reports of sensing problems with SX-HT Model 5976 pulse generators. * * *

"A circuit change to reduce the potential for the undersensing in Spectrax SX-HT Models 5976 and 5977 has been identified and implemented. The redesigned product will be available in approximately eight weeks. * * *"

Ohio case law is unresolved as to whether Evid. R. 407 is applicable in a case involving strict liability. See Giannelli, Ohio Evidence Manual (1982), Section 407.05. In the case *sub judice*, the trial court excluded Exhibit No. 34, the doctors' advisory letter, and deemed it inadmissible in regard to appellants' case-in-chief. However, the court did not rule upon its admissibility for purposes of events which demonstrated culpability. The trial court relied upon the appellate court decisions in *Freeman* and *Prickett* in reaching its decision to exclude this evidence in regard to appellants' case-in-chief. The general standard upon appellate review is that the admission or rejection of evidence is a matter which is within the discretion of the trial court. See *State* v. *Hymore* (1967), 9 Ohio St. 2d 122, 38 O.O. 2d 298, 224 N.E. 2d 126. This court does not purport to decide the issue of whether Evid. R. 407 applies to every case asserting strict liability. This court is making a limited determination that the trial court correctly applied Evid. R. 407 to the portions of the direct testimony of Drs. Morant and Cavin, predicated on Exhibit No. 34, and the exhibit itself as it related to appellants' case-in-chief.

Furthermore, this court is reviewing whether the trial court properly excluded this same testimony for purposes of rebuttal. The following is a series of excerpts from the cross-examination testimony of Kenneth F. Kopesky, manager of Medtronic's product performance department:

"Q. [Mr. Miller] As I would understand it, part of your duties involve testing pulse generators that are returned to Medtronic after being removed from a patient; is that correct?

"A. [Mr. Kopesky] That is correct.

"* * *

"Q. [Mr. McCarthy] We can agree, you and I, can we not, that at least some of the Medtronic Spectrax HT Pulse Generators manufactured in 1981, didn't perform, failed to perform the way Medtronic intended for them to perform?

"A. [Mr. Kopesky] That is correct.

"Q. And we can also agree that those same units, if they didn't intend to perform, Medtronic intended for them to perform, didn't perform the way the recipients or patients expected them to perform?

"A. That's correct.

"Q. And we can agree, also, can we not, that Medtronic was able to redesign the Medtronic Spectrax HT Pulse generator sometime before March of 1982 so as to eliminate this potential for undersensing?

"Mr. Miller: Objection.

"The Court: Overruled.

"A. I believe so. Timing, I'm not sure.

"Q. Okay. And with regard and with deference to your not being sure about the timing —

"A. Okay.

"Q. — We can also agree, can we not, that the redesign of these later models Spectrax HT's was and would

have been technologically and economically feasible in 1981?

"A. Yes.

"Q. And we can also agree, can we not, that Mrs. Caggiano's pulse generator, as it left the factory in 1981, was designed under the old, rather than the new, or redesigned specification?

"A. That is correct.

"Q. Would you agree, sir that the potential that some of these units exhibited for undersensing was a direct and proximate result of the way they were designed?

"Mr. Miller: Objection.

"The Court: Just one second before you answer the question. Hold off a second. Overruled.

"A. Can you repeat that, please?

"Q. (By Mr. McCarthy) Yes, sir. Was the potential for undersensing that some of these Spectrax units exhibited a direct and proximate result of the way they were designed?

"A. Yes.

"Q. And those units, because of the way they were designed, left the Medtronic factory with a potential to undersense a potential to fail?

"Mr. Miller: Objection.

"The Court: Sustained. I don't understand the question. Too many potentials in there.

"Q. Well, let me try and clarify this. If we talked about the old Spectrax and the new Spectrax, can we agree that we are talking about the old Spectrax, being the ones before the redesign, and the new ones being the one after the redesign?

"A. Okay. That's fine.

"Q. Would you agree that the old Spectrax units, as they left the factory, and because of their design, had a potential to fail?

"Mr. Miller: Objection.

"The Court: Overruled.

"A. Yes.

"* * *

"Q. [Mr. Miller] Let's talk very briefly about the pulse generator which was the one that was removed from Mrs. Caggiano. Let's not talk about every pulse generator Medtronic ever produced or every product. With respect to this pulse generator, does it reveal any potential with this pulse generator?

"A. [Mr. Kopesky] It does not.

"Q. Does it reveal any potential to undersense with respect to that pulse generator?

"A. It does not."

It is apparent that the evidence which was contained in the content of the doctors' advisory letter, Exhibit No. 34, was subsequently introduced into the record during the cross-examination of Kopesky. Kopesky testified that Medtronic was aware of undersensing problems with its Spectrax HT pulse generators and that Medtronic had effected a design change to eliminate the potential for undersensing. On review, although it may or may not have been error for the trial court to exclude Exhibit No. 34, the ultimate effect of the trial court in excluding it resulted in no prejudicial error since the evidence was subsequently introduced through the testimony of Kopesky. Accordingly, the content of the doctors' advisory letter was before the jury, resulting in no prejudical effect to appellants.

Appellants also assert in their first assignment of error that the trial court erred in excluding the direct testimony of Dr. Morant and Dr. Cavin on the basis of Evid. R. 407. The trial court found this excluded testimony to be predicated upon the content of the doctors' advisory letter, Exhibit No. 34; therefore, based on the previous discussion regarding this exhibit, appellants suffered no prejudicial effect by the exclusion of the direct testimony of Drs. Morant and Cavin during appellants' case-in-chief since the evidence was subsequently introduced

through the cross-examination of Kopesky.

Appellants assert in their second assignment of error that the trial court erred in excluding the testimony of Drs. Morant and Cavin for the purposes of rebuttal. In his testimony, Kopesky stated that the records of the tests which were performed on appellant's pulse generator when it was returned to Medtronic indicated that the unit was functioning properly and within normal limits. On cross-examination, Kopesky testified that there was no specific test to indicate whether the unit had the potential to undersense. However, in an excluded portion of Dr. Morant's testimony, Dr. Morant indicated that the pulse generator would *test* normally when *tested* outside the body since it would be impossible to simulate what was happening *in vivo* regarding the patient. Appellants assert that this portion of Dr. Morant's testimony should have been admitted for purposes of rebuttal. However, Kopesky's testimony was not that of an expert, but merely that of the custodian of Medtronic's records. Since appellants have produced no testimony in their case-in-chief to scientifically substantiate this theory, Dr. Morant's statement is speculative and too remote to be considered for purposes of rebuttal, particularly since he himself admitted that he was not a design or electronics expert. Furthermore, Dr. Morant's testimony suggests that a number of variables could have been responsible for appellant's medical difficulties which is exactly what appellee was trying to establish, *i.e.*, leads not connected properly, and other medical complications given appellant's extensive medical history. Appellants have not demonstrated prejudicial error and the trial court was within its discretion. See *St. Paul Fire & Marine Ins. Co.* v. *Baltimore & Ohio Rd. Co.* (1935), 129 Ohio St. 401, 2 O.O. 396, 195 N.E. 861.

The remaining portions of Drs. Morant's and Cavin's testimony were excluded on the basis of Evid. R. 407. Evid. R. 407 requires the exclusion of evidence regarding subsequent remedial measures unless the evidence is offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment. The trial court instructed the jury that the evidence concerning the change in design was admissible for the limited purpose of showing that an alternative design was feasible at the time that the item was manufactured or sold. Upon review, appellants have not demonstrated to this court that the testimony of Drs. Morant and Cavin was of such a nature to be considered as one of the exceptions to this exclusionary rule and that the testimony should have been admitted for another purpose. See Evid. R. 407. Furthermore, the trial court based its decision to exclude this testimony on the fact that those portions of the testimony were predicated upon the doctors' advisory letter. Thus, in light of this court's disposition of appellants' first assignment of error, the trial court properly excluded the testimony of Drs. Cavin and Morant.

Accordingly, appellants' first and second assignments of error are not well-taken and are overruled. Appellants' motion to supplement the record pursuant to App. R. 9(E) is sustained. The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

REILLY, J., concurs.

BRYANT, J., concurs in judgment only.

BRYANT, J., concurring. I concur in the judgment only.

The issue presented by this case is whether Evid. R. 407 applies to strict products liability actions. I believe it does. See *Hall* v. *American Steamship Co.* (C.A. 6, 1982), 688 F. 2d 1062, 1066-1067; *Gauthier* v. *AMF, Inc.* (C.A. 9, 1986), 788 F. 2d 634, amended (1986), 805 F. 2d 337; *Cann* v. *Ford Motor Co.* (C.A. 2, 1981), 658 F. 2d 54, certiorari denied (1982), 456 U.S. 960; *Werner* v. *Upjohn Co.* (C.A. 4, 1980), 628 F. 2d 848, certiorari denied (1981), 449 U.S. 1080. Indeed, as detailed in the majority opinion, such an interpretation is supported not only by the history of the rule, but also by the policy of encouraging subsequent remedial measures which underlies Evid. R. 407. Accordingly, the trial court correctly applied Evid. R. 407 to appellants' case. Even so, appellants suggest in their brief that the letter, and the doctors' testimony relating thereto, were admissible for purposes other than proof of culpable conduct, such as causation and control. While Evid. R. 407 allows evidence of remedial measures for such limited purposes, appellants did not attempt to introduce their evidence for those limited purposes. In any event, since the substance of the letter was placed into evidence through appellants' cross-examination of defendant's witness, appellants sustained no prejudice as a result of the trial court's ruling. As a result of the foregoing, I would overrule the first assignment of error.

Appellants also contend that the trial court erred in excluding the doctors' deposition testimony offered in rebuttal. The deposition testimony of the doctors included numerous direct references to the advisory letter, both in the questions and the answers, references which appellants deleted in order to facilitate admission of the testimony. However, because of the extent to which appellants' deletions took the questions and doctors' answers out of context, the trial court reasonably could conclude that the probative value of the testimony was substantially outweighed by the danger of confusion of the issues or of misleading the jury. See Evid. R. 403(A). In short, I cannot say that the trial court exceeded the bounds of its discretion in so concluding. See *State* v. *Morales* (1987), 32 Ohio St. 3d 252, 257, 513 N.E. 2d 267, 273; *Humphrey* v. *Dept. of Mental Health & Mental Retardation* (1984), 14 Ohio App. 3d 15, 18, 14 OBR 18, 21, 469 N.E. 2d 981, 985. The trial court having so determined, it properly excluded appellants' doctors' deposition testimony under Evid. R. 403(A). Accordingly, I would overrule appellants' second assignment of error.

For the foregoing reasons, I would affirm the judgment of the trial court.