## Smith v. Raymond Corp.
### *[Cite as 7 AOA 310]*

*Case No. 57670*
*Cuyahoga County, (8th)*
*Decided October 25, 1990*

*Timothy A. Shimko, 925 Euclid Avenue, Suite 1750, Cleveland, Ohio 44115, for Plaintiff-Appellant.*

*Harry T. Quick and Pete C. Elliott, Benesch, Friedlander, 1100 Citizens Building, 850 Euclid Avenue, Cleveland, Ohio 44114, for Defendants-Appellees.*

MATIA, P.J.

Plaintiff-appellant, Joel Smith, appeals from the Cuyahoga County Court of Common Pleas' entry of judgment on a jury verdict in favor of defendants-appellees, Raymond Corporation (Raymond) and Hillis Equipment Co. (Hillis).

On January 11, 1985, appellant was injured at his place of employment at Chase Brass and Copper Co. (Chase) when an orange, 8 1/2 foot tall, 15,000 pound Model 71B Raymond Sideloader operated by appellant's co-employee, Jerry Burt, and loaded with 3,000 pounds of material, ran over appellant's right foot causing severe injuries. The sideloader was manufactured by appellee Raymond and sold to Chase by appellee Hillis.

On January 9, 1987, appellant filed against appellees a complaint sounding, *inter alia,* in strict products liability, essentially alleging that the sideloader was defectively manufactured and/or designed. It later became clear that appellant believed the particular Raymond sideloader was defective in design since it lacked allegedly essential flashing lights, sounding devices and mirrors. The lack of these safety devices, which were optional on the particular sideloader model, was proposed to have proximately caused appellant's injuries.

On January 16, 1987, employer Chase also filed suit against appellees, praying for relief with respect to certain worker's compensation and medical benefits paid as a result of appellant's injury. The cases were consolidated by journal entry of June 23, 1988, but Chase later voluntarily dismissed its complaint without prejudice on April 13, 1989.

Trial began on April 12, 1989, and the jury verdict in favor of appellees was returned on April 20, 1989. Notice of appeal was timely filed in this court, and appellant has assigned six errors for our review. A cross-appeal has also been filed by the defendants below, assigning a single error. We first address appellant's challenges.

## I. APPELLANT' S REQUESTED CHARGE ON THE CONSUMER EXPECTATION TEST

In his first assignment of error, appellant contends:

"THE TRIAL COURT ERRED IN REFUSING TO CHARGE THE JURY ON THE CONSUMER EXPECTATION TEST TO DETERMINE WHETHER THE PRODUCT IN QUESTION WAS DEFECTIVE AS THE CONSUMER EXPECTATION TEST IS APPLICABLE IN CASES INVOLVING INDUSTRIAL WORKMEN AND PLAINTIFF DEMONSTRATED EVIDENCE THAT THE PRODUCT WAS MORE DANGEROUS THAN THE ORDINARY CONSUMER WOULD EXPECT."

The consumer expectation standard applies in design defect product liability cases, and comprises the first of a two-prong test as defined as follows by the Ohio Supreme Court in *Cremeans v. International Harvester Co.* (1983), 6 Ohio St. 3d 232, at syllabus:

"In determining whether a product design is a defective condition, a single, two-pronged test should be used: under the *consumer expectation standard prong,* a defendant will, be subject to liability if the plaintiff proves that the product design is in a defective condition because the *product fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner;* under the risk-benefit standard prong, a defendant will be subject to liability if the plaintiff

proves, by using relevant criteria, that the product design is in a defective condition because the benefits of the challenged design do not outweigh the risks inherent in such design. *(Knitz v. Minster Machine Co.,* 69 Ohio St. 2d 460 [23 O.O.3d 403], approved and followed.)" (Emphasis added.)

Generally, a trial court should not charge the jury on an issue that is not supported by the evidence. *Steadley v. Montanya* (1981), 67 Ohio St. 2d 297. Refusal to give a requested charge is proper if the facts in evidence do not support an essential element of the charge. Cf. *Steinbeck v. Philip Stenger Sons, Inc.* (1975), 46 Ohio App. 2d 22.

In the instant case, it was undisputed that appellant was quite familiar with the particular sideloader, and had operated it frequently since it had been purchased by his employer. In fact, appellant admitted that he reviewed the operator's manual and personally operated the sideloader "on the average of twice a week and sometimes three times a week for an entire eight hour shift." (Tr. 174; 217.) In short, it was clear that appellant was very well acquainted with the operation and features of the sideloader, and clearly knew what lights and sounding devices were or were not present on the sideloader. Thus, the facts were clear as to appellant's expectations. Appellant was hardly ignorant of the product and had clear expectations regarding the obvious presence or absence of safety devices.

The trial court's refusal to charge the jury on the 'consumer expectation standard', under the facts of the instant case, was not error prejudicial to appellant. Appellant's first assignment of error is not well taken.

## II. MOTION IN LIMINE RE: EVIDENCE OF NEGLIGENCE OF APPELLANT AND/OR CHASE

In the second assignment of error, appellant argues:
"THE TRIAL COURT ERRED IN OVERRULING PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANT FROM ARGUING TO THE JURY THAT PLAINTIFF AND/OR PLAINTIFF'S EMPLOYER, CHASE BRASS & COPPER COMPANY, WERE NEGLIGENT AS ANY ALLEGED NEGLIGENCE OF PLAINTIFF AND/OR PLAINTIFF'S EMPLOYER WAS IRRELEVANT AND THE INTRODUCTION OF SUCH EVIDENCE WAS PREJUDICIAL TO PLAINTIFF."

Appellant argues that the trial court should have disallowed appellee's presentation of evidence that appellant was injured as a result of his own inadvertence or horseplaying, and/or the employer Brass' negligence in maintaining a hazardous workplace. It was appellee's contention at trial that even if the product was defective in design, such alleged defect was not a *proximate cause* of this appellant's injury. Appellee's evidence essentially consisted of: (1) the testimony of Mr. Robin Elliot, a co-worker of appellant's who was present and operating an overhead crane on the scene at the time of the accident, who testified that he had an unobstructed view of appellant's injury which, according to Mr. Elliot, resulted solely as a result of appellant's having run up to the back of the sideloader and placing his hands on the rear cage of the sideloader (in which Mr. Burt was operating) in an apparent attempt at "horseplay"; and (2) evidence that the Chase Brass premises were not up to OSHA (Occupational Safety and Health Act) standards.

Initially, we note that the admission or rejection of evidence is a matter within the sound discretion of the trial court. See e.g., *Caggiano v. Medtronic, Inc.* (1988), 47 Ohio App. 3d 29, at 32. The purpose of a motion in limine is to preclude the admission into evidence of potentially prejudicial matters which are irrelevant and inadmissible. Cf. *Rinehart v. Toledo Blade Co.* (1985), 21 Ohio App. 3d 274.

Appellant is correct that comparative or contributory negligence is not a defense in a strict products liability action. See *Cincinnati Ins. Co. v. Volkswagen of America, Inc.* (1987), 41 Ohio App. 3d 239. However, it is still axiomatic that in every products liability action the plaintiff must prove that the alleged defect was a proximate cause of his injury. *Buckeye Union Ins. Co. v. Liberty Solvents and Chemicals Co.* (1984), 17 Ohio App. 3d 127; *Hargis v. Doe* (1981), 3 Ohio App. 3d 36, at 37; *Wladyslaw Chwirut v. Cleveland Punch and Shear Works* (Feb. 15, 1979), Cuyahoga App. No. 38168, unreported. Appellees' evidence went to negate the element of proximate cause since it was designed to demonstrate that the alleged defect was not a cause of appellant's injury, but rather such injury was wholly the result of some other circumstances (i.e., horseplay). For this reason, the evidence was quite relevant.

As it turned out, the jury made the clear finding, through a unanimous answer to a special interrogatory, that the product was

without a defect. Thus, appellant suffered no prejudice as a result of the trial court's denial of his motion in limine. The trial court did not abuse its discretion, and appellant's second assignment of error is not well taken.

### III. CHARGE TO JURY RE: PLAINTIFF'S NEGLIGENCE

In his third assignment of error, appellant argues:

"THE TRIAL COURT ERRED IN REFUSING TO CHARGE THE JURY THAT ANY ALLEGED NEGLIGENCE OF PLAINTIFF AND/OR PLAINTIFF'S EMPLOYER WAS NOT AT ISSUE AS CONTRIBUTORY NEGLIGENCE IS NOT A DEFENSE IN AN ACTION BASED ON STRICT LIABILITY."

As discussed in disposing of the preceding assignment of error, any evidence admitted regarding negligence on the part of appellant and/or Chase was used for the purpose of demonstrating that it was solely appellant himself and/or Chase that proximately caused his injury. Such evidence was not used in pursuit of establishing the irrelevant principles of comparative or contributory negligence.

Thus, the trial court did not err in refusing to charge the jury that appellant's negligence was not in issue since a finding that appellant's horseplay was the sole cause of his injury would absolutely negate the essential element of proximate cause. Moreover, since the jury expressly and unanimously found that there was no defect at all in the sideloader, appellant suffered no prejudicial error by reason of the trial court's refusal. Appellant's third assignment of error is not well taken.

### IV. MOTION IN LIMINE RE: INDUSTRIAL STANDARDS

As a fourth assignment of error, appellant states:

"THE TRIAL COURT ERRED IN OVERRULING PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE THE DEFENDANT FROM INTRODUCING EVIDENCE OF INDUSTRIAL STANDARDS AS SUCH STANDARDS PERTAINED ONLY TO THE CONDUCT OF PLAINTIFF'S EMPLOYER AND WERE IRRELEVANT TO THE ISSUE OF DEFECTIVE DESIGN."

As noted previously, appellant sought to preclude appellees from introducing evidence that Chase' premises were in violation of OSHA standards.

Appellees introduced evidence that appellant's employer, Chase, maintained an unsafe workplace, which condition might have been the sole cause of appellant's injury. The trial court cautiously and correctly warned the jury that the OSHA regulations pertaining to Chase's premises were, as appellant states, irrelevant to the element of whether the sideloader was defective in design or manufacture. *Minechello v. U.S. Industries, Inc.* (C.A. 6, 1985), 756 F.2d 26.

Such evidence was not irrelevant, however, to the element of proximate cause even though it was insufficient, standing alone, to have established that Chase's conduct was the *sole* cause of appellant's injury. The sufficiency of such evidence is not an issue before us since the jury *did* have sufficient evidence that appellant's *own* conduct was the sole cause of his injury. If evidence is susceptible to more than one interpretation, we interpret it in a manner consistent with the verdict and most favorable to the trial court's judgment. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St. 3d 77.

The trial court did not err in allowing the evidence of Chase's OSHA violations as they bore on the issue of proximate cause, and not on the issue of whether there was a defect. Contrary to appellant's assertions, such evidence was not inadmissible under Evid. R. 403(A) since its probative value was not outweighed by the dangers listed in the Rule.

Appellant's fourth assignment of error is not well taken.

### V. INTRODUCTION OF COMPLIANCE WITH ANSI STANDARDS

In the fifth assignment of error, appellant argues:

"THE TRIAL COURT ERRED IN PERMITTING DEFENDANT TO INTRODUCE AS EVIDENCE AND SUBSEQUENTLY TO ADMIT AS AN EXHIBIT TO THE JURY AN INTERPRETATION OF INDUSTRIAL RELATIONS."

The trial court allowed appellees to admit as an exhibit an interpretation by the American National Standards Institute (ANSI) B-56.1 subcommittee which essentially states that the addition of too many alarms on industrial machinery such as the subject sideloader may actually create danger in the workplace. Appellant did not object to admission of the ANSI standard itself, but only to admission of the

ANSI subcommittee's interpretation of the standard which, appellant suggests, is irrelevant and hearsay.

Appellees' engineering expert, Robert Rogers, testified that the purpose of ANSI is to promote product safety. The purpose of the ANSI B-56 committee specifically is to determine the standards for forklift trucks. The purpose of the ANSI B-56.1 subcommittee is to write the standards for the particular forklifting sideloader involved in the instant case (Tr. 651-660). At the time of trial, Mr. Rogers had been a member of the ANSI B-56 committee for approximately eight years, and was currently a member of the ANSI B-56.1 subcommittee. The sideloader involved in this case met ANSI standards (Tr. 652).

The exhibit challenged as hearsay by appellant is a written interpretation of an ANSI standard which was prepared by the B-56.1 subcommittee in response to a question posed by a person trying to apply the standard. The question regarded what operating conditions would require additional warning devices. The subcommittee's written response (Interpretation 1-6) simply indicated that there may be situations where certain safety devices might actually create dangers rather than avoiding them. (Tr. 666) (See Defendant's Exhibit A1). The response states in part:

"***The argument against indiscriminate use of additional alarms is that it might encourage the driver to ignore his responsibility of looking in the direction of travel and being alert to impending danger. Also, automatic continuous alarms can become so commonplace that they will soon be ignored by persons in the area."

The disputed evidence was clearly relevant, since it was probative on the issue of whether the design of the sideloader was defective with regard to safety devices. Evid. R. 402 provides that all unexcepted relevant evidence is admissible. Evid R. 403(A) excepts from such general rule evidence, the probative value of which is "substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Balancing these competing factors in the instant situation weighs in favor of the admissibility of the ANSI committee's report. The probative value of the subcommittee's report in proving the propriety of the sideloader's design was not outweighed by the dangers listed in Evid. R. 403.

As noted, appellant also asserted that the committee's report was hearsay. "Hearsay" is defined at Evid. R. 801(C) as:

"*** a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Generally, hearsay is not admissible. Evid. R. 802. Even if the ANSI subcommittee's interpretive report or response is to be considered as containing hearsay, it is excluded from operation of the hearsay rule since it falls under the hearsay exception of Evid. R. 803(6), which provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"***

"(6) *Records of regularly conducted activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B) (10), unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conduct for profit."

The decision to admit a record into evidence pursuant to Evid. R. 803(6) rests within the sound discretion of the trial court, which will not be disturbed on appeal absent a clear showing of an abuse of discretion. *Cleveland v. Huff* (1984), 14 Ohio App. 3d 207; *National City Bank v. Fleming* (1981), 2 Ohio App. 3d 50. Defendants' Exhibit A1 is a form of memorandum dated September 3, 1986 (a few months prior to the filing of this lawsuit) by the committee upon which Mr. Rogers sat. Mr. Rogers clarified that Exhibit A1 was prepared and kept in the course of a regularly conducted business activity, and that it was the regular practice of the committee to make such memoranda. As such it was excluded from the hearsay rule by operation of Evid. R. 803(6).

The trial court did not abuse its discretion in this regard, and appellant's fifth assignment of error is not well taken.

## VI. SUBSEQUENT REMEDIAL MEASURE

In his sixth and final assignment of error, appellant contends:

"THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION IN LIMINE PRECLUDING PLAINTIFF FROM INTRODUCING ANY EVIDENCE OF THE ADDITION OF A MOTION ALARM TO THE PRODUCT IN QUESTION AS DEFENDANT REPEATEDLY DISPUTED THE FEASIBILITY OF SUCH AN ALARM AND SUCH AN ADDITION WAS NOT A SUBSEQUENT REMEDIAL MEASURE AS THE ADDITION WAS PERFORMED AT THE REQUEST OF PLAINTIFF'S EMPLOYER, NOT THE DEFENDANT."

The trial court disallowed appellant to introduce evidence that Chase itself, who was not a party to this action, added an alarm to the sideloader after the appellant was injured. Evid. R. 407 provides:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

The applicability of this Rule to strict product liability actions is doubtful, since the purpose of the rule (encouraging improvements and repairs) is inapplicable in this setting. That is, it is always within the economic interest of a manufacturer to remedy defective products. See *Caggiano v. Medtronic Inc.* (1988), 47 Ohio App. 3d 29. In the instant case, however, the rule is even more inapplicable since it was not the manufacturer or distributor, but rather the non-party employer, Chase, who made the subsequent addition of the alarm.

Moreover, the feasibility of adding an alarm was never in question. It was never disputed that such alarms were available as options on the particular model of sideloader involved in this case. The addition of the alarm necessitated no change in design whatsoever.

Thus the evidence could not properly be excluded as a subsequent remedial measure, but it was properly excluded since it bore no relevance to any of the issues involved in this case. Whether or not the employer Chase chose to add an optional alarm after the appellant's injury has no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable," Evid. R. 401, and therefore is not relevant and inadmissible. Evid. R. 402.

The trial court did not abuse its discretion in excluding such evidence. Appellant's sixth assignment of error is not well taken.

## VII. CROSS-APPEAL

Defendants filed their own appeal from the judgment of the trial court, asserting the following single assignment of error:

"THE TRIAL COURT ERRED IN PERMITTING THE PLAINTIFF TO ARGUE TO THE JURY THAT DEFENDANT, HILLIS, WAS NEGLIGENT IN ALLEGEDLY FAILING TO WARN PLAINTIFF'S EMPLOYER OF THE AVAILABILITY OF OPTIONAL SAFETY DEVICES, WHEN PLAINTIFF'S ONLY CLAIM WAS FOR STRICT LIABILITY AND NOT NEGLIGENT."

Defendants argue that plaintiff's argument to the jury regarding an alleged failure by the seller Hillis to inform the employer Chase that safety lights and claims were available as options on the Model 71 Raymond sideloader was improper, since plaintiff had abandoned any claims of negligence against Hillis.

Whether or not the disputed isolated comments of plaintiff's counsel were improper is without consequence. Defendants have failed to remotely demonstrate any prejudice suffered as a result. Defendants' brief in this cross-appeal sates at page 4 that it seeks relief "in the event of a remand in this case."

Since the comments of plaintiff's counsel have not prejudiced the defendants cross-appellants, this assignment of error is not well taken.

*Judgment affirmed.*

DYKE, J., concurs.
J.F. CORRIGAN, J., concurs in judgment only.