## Clark v. Energy Unlimited, Inc.
[Cite as 7 AOA 101]

*Case No. 89 CA 35*
*Washington County, (4th)*
*Decided September 15, 1990*

*Allan Sherry, 316 South Main Street, Woodsfield, Ohio 43793 for appellant.*

*Kevin M. Maloney, 37 West Broad Street, Suite 1150, Columbus, Ohio 43215-4189 for appellee.*

GREY, J.

This is an appeal from an entry of the Washington County Court of Common Pleas. The court granted summary judgment in this wrongful death action in favor of appellee Energy Unlimited, Inc. (Energy Unlimited). We reverse.

The record reveals the following facts. On June 17, 1985 Douglas Clark, appellant's decedent, was an employee of Energy Unlimited. On that afternoon Craig Lovett, also an employee of Energy Unlimited, received a call from another employee requesting that lids be removed from three 55-gallon drums to be used to store oil-spill pads.

Lovett ordered Clark to get the three drums and cut the lids off them. The drums in question had, at one time, contained antifreeze.

Although they had subsequently contained water, the drums had not been commercially cleaned. The outside of each drum contained a label warning individuals that the drum contained a highly flammable hazardous substance and that a welding torch was not to be used on the drum unless it had first been commercially cleaned.

Lovett came out of his office and watched Clark remove the tops of two of the drums. As Lovett walked away from the area where Clark was removing the lid from the third drum he heard a loud explosion. On June 30, 1985, Clark died of burns sustained in that explosion.

On June 19, 1986 Eldon Clark, as Administrator of Douglas Clark's estate, filed a wrongful death complaint in the Washington County Court of Common Pleas against Energy Unlimited based on an allegation that Energy Unlimited committed an "intentional tort" by ordering Douglas Clark to remove the lids from those drums which led to Clark's death. Energy Unlimited answered on July 14, 1986.

On June 22, 1987, Energy Unlimited filed a Motion for Summary Judgment. The appellant, Eldon Clark, filed a Memo Contra. The trial court overruled the motion.

The parties engaged in discovery proceedings. On September 18, 1989 Energy Unlimited filed another Motion for Summary Judgment arguing that Clark could not set forth any facts to support his allegation of intentional tort. Clark filed a Memo Contra. On October 10, 1989 the trial court held a hearing on the motion and in an October 24, 1989 Judgment Entry granted Energy Unlimited's Motion for Summary Judgment. Eldon Clark appeals and assigns one error.

"The trial court committed prejudicial error in sustaining defendant's motion for summary judgment when the evidence submitted by the parties is contradictory and a genuine issue of material fact exists. 'Where the facts alleged are such that reasonable minds could differ as

to whether the defendant's conduct was intentional, a jury question is created which ordinarily may not be resolved by summary judgment.' *Kunkler v. Goodyear Tire and Rubber Co.* (1988), 36 Ohio St. 3d 135 at 140."

Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that:

"(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is-entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the party the motion for summary judgment is made, that conclusion is adverse to that party. "*Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E. 2d 267, 274; *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 117, 522 N.E. 2d 489, 505.

Clark asserts that Energy Unlimited disregarded the danger warning on the drum, and that ordering Douglas Clark to cut the lids with a torch rises to the level of an intentional tort. Clark further asserts that this is a genuine issue of fact precluding a grant of Summary Judgment to Energy Unlimited. We agree.

In support of his assertion, Clark relies on *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St. 3d 135. In *Kunkler* the Ohio Supreme Court held that Goodyear's notice of prior smaller explosions was enough to submit the issue of intentional tort to a jury. Clark asserts that the warning labels on the drums gave Energy Unlimited the same type of notice as discussed in *Kunkler*. Energy Unlimited contends that more is required than just prior notice as in *Kunkler, supra*, to establish an intentional tort of an employer. Again, we agree.

In support of its contention Energy Unlimited cites *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100. In *Van Fossen* the court held that:

"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. Where the risk is great and the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the conse-

quences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk - *something short of substantial certainty* - is not intent." (Citation omitted) Emphasis added.

The language above shows that the Supreme Court has directed the courts to follow a curving scale in assessing risk. This is a welding case, and if we apply the actual language of *Van Fossen, supra,* we arrive at this kind of analysis.

"Where the employer acts 'despite his knowledge of some risk (like sending the employees to cut with a welding torch without adequate protective clothing), his conduct might be negligence."

"Where the risk is great and the probability increases that a particular consequences might follow, (like sending an employee to use a cutting torch without safety glasses) then the employer's conduct may be characterized as recklessness."

"As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure, or condition (like having an employee use a torch to cut into a steel drum containing volatile, explosive vapors which if the drum explodes will certainly injure and probably kill the employee) and he still proceeds, he is treated by the law as if he had in fact desired to produce the result."

Energy Unlimited contends that while it had knowledge and appreciation of the risk involved in removing the lids from those drums, it did not know with substantial certainty that any drum would explode or that Douglas Clark would sustain fatal injuries if the torch caused one of the drums to explode.

Clark asserts, pursuant to *Van Fossen, supra,* that a jury could find that the warning label coupled with Craig Lovett's knowledge of the explosiveness of the drums which had not been commercially cleaned first, would show that Energy Unlimited knew that injury to Douglas Clark was substantially certain to occur when he attempted to remove the lids from the drums. This presents a material issue of fact as to whether Energy Unlimited committed an intentional tort resulting in Douglas

Clark's death. This issue should have been determined by a jury.

The trial court erred in granting summary judgment to Energy Unlimited. Clark's assignment of error is well taken and is sustained.

It is ordered that Judgment be reversed and appellant recover of appellee costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this Entry.

A certified copy of this Entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

*Exceptions.*

STEPHENSON, J., dissenting.

I respectfully dissent from the judgment of the majority sustaining appellant's assignment of error and reversing the judgment of the court below. As with most intentional tort actions against employers, the central question herein is whether appellee knew that an injury to appellant's decedent was substantially certain to occur. Appellant's case rests primarily on the following warning which appears on each of the 55 gallon drums which had contained antifreeze, including the one which exploded:

"DANGER

"After this container has been emptied it may contain explosive and harmful vapors and residue. Keep away from heat, sparks, and flames! Do not cut, puncture, or weld on or near this container. Do not re-use this container for any purpose until commercially cleaned."

Appellant contends that from this warning, appellant knew that an injury was substantially likely to occur if the tops of the drums were cut off with a cutting torch. The majority herein reverses the court below on that ground. I disagree.

Craig Lovett stated in his deposition that he told appellant's decedent to get three water barrels, *i.e.*, drums that had contained anti-freeze but were being used to carry water to the drill site. Lovett further stated that he believed each of the water barrels had actually contained water after the anti-freeze had been emptied therefrom, and because of that believed there was no danger. In fact, Bovett stayed with appellant's decedent while the first two drums had the stopper taken out and were tipped over before the tops were cut off. Lovett observed rusty water running out of each and appellant's decedent cut the tops off without incident. Lovett then left appellant's decedent to remove the top from the third drum and shortly, thereafter, he heard an explosion.

Lovett also noted that the normal procedure for determining whether any antifreeze remained in the drum was to inspect the drum by removing the stopper and dumping the drum or smelling it. The person to inspect the drum was usually a qualified welder, *i.e.*, in this case appellant"s decedent. Lovett stated it was common knowledge that the drums originally contained antifreeze and that they had not been commercially cleaned. Hence, Lovett assumed appellant's decedent was doing everything properly, *i.e.* inspecting the drums before cutting, before he (Lovett) went back to his job leaving appellant's decedent to finish.

I do not believe from this uncontroverted evidence that appellee knew an injury was substantially certain to occur. He was negligent or even reckless to request that an employee cut with a torch the tops off drums which had contained water after the explosive material was removed. However, it was no an intentional tort. What clearly shows that there was no knowledge that an injury was substantially likely to occur was the fact that Lovett remained with appel-lants' decedent while the first two toes were cut off. Lovett certainly would not have intentionally endangered his own life.

Because I conclude that summary judgment was properly granted, I would affirm the judgment of the court below.

HARSHA, J., concurring.

I concur in the judgment and opinion sustaining appellant's assignment of error and reversing the entry of summary judgment in favor of the employer in this pre-August 22, 1986[1] employer intentional tort action, but would add the following.

In order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against an

employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty and not just a high risk; and (3) that the employer, under such circumstances and with such knowledge, did act to require the employee to continue to perform the dangerous task. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, paragraph five of the syllabus; *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St. 3d 190, syllabus. In the case at bar, the trial court determined in its October 13, 1989 "DECISION" the following:

"In the subject case: (1) the employer had Knowledge of a dangerous condition or instrumentality within its business operation; (2) the employer had Knowledge that the employee was subject to the dangerous condition or instrumentality and that harm could be caused to the employee thereby; and (3) that with such Knowledge and under such circumstances, the employer required the employee to perform the dangerous task."

However, the court below further held, as a matter of law, that appellee's knowledge of harm was insufficient as a matter of law to constitute a substantial certainty rather than just a high risk.

The summary judgment evidence before the lower court included an affidavit of employee, Diana Dille, wherein she stated that on June 17, 1985, she received a call from another employee of appellee that he needed three, fifty-five gallon drums with their tops cut off to use at an oil spill; that appellee's head mechanic, Craig Lovett, ordered appellant's decedent to get the drums and cut the tops from them; that this was a "hurry up job," and that the "only way this could be done hurriedly... would have been with a cutting torch and Doug Clark was employed as a welder." Lovett stated in an affidavit that on June 17, 1985, he instructed appellant's decedent to get the barrels; that he knew the barrels originally contained antifreeze, and that he further knew the barrels had not been commercially cleaned. Moreover, the warning label on the barrels indicated that the containers should not be cut, punctured, or welded and that they should not be reused for any purpose until commercially cleaned.

As this writer noted in a concurring opinion to this court's latest pronouncement on these cases, *Hamilton v. Mitchellace* (Feb. 5, 1990), Scioto App. No. 1783, unreported:[2]

"[T]he applicable test to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his/her employee is that set forth in *Van Fossen, supra.* Although the *Van Fossen* intent test was an attempt to resolve some of the confusion engendered by *Jones*, which had compelled courts, counsel, and legal authorities to "apply their own often contradictory interpretations of this standard upon a wide variety of fact patterns," *Van Fossen, supra* at p. 109, it is equally apparent that application of the *Van Fossen* intent test has yet to have the desired result of diminished confusion and difficulty in *its* application. This difficulty in application, while existing after trials on the merits, seems to be even more apparent in resolving Civ. R. 12(B) (6) motions to dismiss for failure to state a claim, *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St. 3d 190, syllabus, motions for summary judgment, *Van Fossen, supra*, motions for directed verdict, and motions for judgment notwithstanding the verdict. *Sanek, supra.*

While our task in these cases is difficult, I would note that in *Hamilton, supra*, a majority of this court held that the employer's knowledge of the potential danger presented by a machine's unguarded nip point and the employer's possession of requisite skill, technology, and equipment to design and install an effective guard, created a genuine issue of material fact precluding summary judgment in the employer's favor on an intentional tort claim. Furthermore, in *Courtad v. Whirlpool Corp.* (1989), 48 Ohio App. 3d 200,[3] the Hancock County Court of Appeals reversed the entry of summary judgment in favor of the employer therein in an employee's intentional tort action against his employer, where there was evidence of certain incidents tending to show that the press on which the employee was working, and which injured him, was known to the employer and its agent to have malfunctioned, thus creating genuine issues of material fact. Analogously, I am persuaded that the summary judgment evidence in the case at bar, when construed most strongly in appellant's favor, would preclude summary judgment in appellee's favor. For the foregoing reasons, I concur in the judgment and opinion reversing the judg-

ment of the court below and remanding the cause for further proceedings.

---

[1] On August 22, 1986, the General Assembly enacted Am. Sub. S.B. No. 307, which amended the Workers' Compensation Act to include a strict definition of "[substantially certain" so that such term would mean that an employer acts with "deliberate intent" to cause an employee to suffer injury, disease, condition, or death. R.C. 4120.80(G)(1). If this standard were applicable in the instant case, summary judgment in favor of appellee would have been properly granted. However, since the cause of action in the case at bar arose prior to August 22, 1986, the amendment to R.C. 4120.80(G) (1) may not be retroactively applied to bar appellant's action. *Van Fossen, supra.*

[2] The Ohio Supreme Court, on June 13, 1990, overruled a motion of Mitchellace to certify the record in that case.

[3] The Ohio Supreme Court overruled a motion to certify the case in 45 Ohio St. 3d 710.