FRAZIER et al., Appellants,

v.

ROYAL BRASS MANUFACTURING COMPANY, Appellee.

[Cite as *Frazier v. Royal Brass Mfg. Co.* (1990), 70 Ohio App.3d 748.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 57785.

Decided Dec. 24, 1990.

*Seymour Gross,* for appellants.

*Robert Archibald,* for appellee.

---

ANN MCMANAMON, Judge.

Foundry workers Walter Frazier, Lewis Hall, Thomas Pless, Otis Robinson and Alfred Rodgers ("the employees") brought an intentional tort claim against Royal Brass Manufacturing Company ("the employer" or "Royal Brass") for injuries they allegedly sustained from lead exposure in their employer's foundry. The employees also sought recovery of medical removal protection benefits pursuant to section 6 of the Occupational Safety and Health Act ("OSHA"), Section 655, Title 29, U.S.Code, and Section 1910.-1025(K), Title 29, C.F.R. The employees' wives sued for loss of consortium. Upon the employer's motion, the trial court entered summary judgment on all

the claims. In a timely appeal, the employees challenge the court's ruling. We affirm.

The employer, a manufacturer of brass faucets, used brass ingots containing lead in its foundry. Frazier and Robinson worked as "molders" there for approximately seventeen years. Pless and Rodgers were employed as "shake-out operators" for five years, ten months, and two years, five months, respectively, in the foundry area. Lewis Hall worked in the same place as a furnace operator for four years, two months.

In May 1985, the five employees were tested for blood lead levels. The tests revealed that four of the five men had lead levels which exceeded the permissible OSHA standards. The Occupational Safety and Health Administration cited the employer for twenty-six OSHA violations. The company closed the foundry the following week and the employees lost their jobs. They now claim the employer stated they might be eligible for the medical removal protection benefits provided for in the OSHA regulations.

In their sole assignment of error, the employees dispute the entry of summary judgment on their claims.

The entry of summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In reviewing a motion for summary judgment, the court must construe the evidence most strongly in favor of the party opposing the motion. *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 517 N.E.2d 904; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. However, the party opposing summary judgment may not rest upon allegations but must produce documentary evidence setting forth specific facts that create a genuine issue for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798.

In *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, the Supreme Court held that, to establish intent for the purpose of proving an intentional tort, the employee must demonstrate:

"(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within his business operation; (2) knowledge by the employer that if employees are required by virtue of their employment to be subjected to such dangerous process, procedure, instrumentality or condition, then harm to them would be a substantial certainty, and not just a high risk; (3) that the employer, under such circumstances, and with such knowledge, did act to so require the employee to continue performing his employment task." *Id.* at 116, 522 N.E.2d at 504.

The court further stated the "mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." *Id.* at paragraph six of the syllabus.

Officials at Royal Brass knew the brass ingots used in their manufacturing process contained lead. They acknowledged an awareness of OSHA standards and regulations. In an affidavit, company president Charles Regan stated that, although the Occupational Safety and Health Administration made "various inspections" of Royal Brass in 1974, 1976 and 1983, it never indicated that the ambient air concentrations of lead in the foundry posed a threat to workers in that area. Regan also averred that, in 1983, a consultant, Envisage Environmental Inc., analyzed conditions in the foundry and found the ambient air concentration of lead to be well within OSHA requirements. The record demonstrates, however, the consultant noted a lack of adequate ventilation and exhaust fans in the foundry. Regan acknowledged in his deposition that he ordered changes based upon the 1983 findings but never followed up to ensure the changes were made.

In their depositions, the employees stated that, in the years they worked at the foundry, they intermittently experienced a flu-like condition referred to as "brass chills." None of the employees filed written complaints with the company about these occurrences or their working conditions, nor were they previously diagnosed as suffering from elevated lead blood levels.

In support of their intentional tort claims, the employees primarily rely upon the employer's 1985 OSHA violations. The employees also cite state statutes regulating conditions in the workplace. At the outset, we note these statutes do not themselves authorize private actions as the employees appear to argue. See *Cuyahoga Valley Ry. Co. v. United Transp. Union* (1985), 474 U.S. 3, 106 S.Ct. 286, 88 L.Ed.2d 2; *Russell v. Bartley* (C.A.6, 1974), 494 F.2d 334. Rather, the statutes provide for governmental enforcement of alleged violations. See R.C. 4121.47; Section 658, Title 29, U.S.Code. Furthermore, an employer's failure to take corrective action or institute safety measures does not necessarily demonstrate "intent" to harm. *Van v. Fossen, supra*, 36 Ohio St.3d at 117, 522 N.E.2d 489. Such conduct may constitute only gross negligence or wantonness by the employer. *Id.*

In the instant case, at least sixteen of the twenty-six OSHA violations dealt with lead regulations. Most of these violations dealt with steps the employer should have taken once lead exposure levels exceeded OSHA minimums. It is undisputed, however, that the company was not aware lead levels in the foundry exceeded the permissible minimums until the May 1985 citations. The company closed the foundry in June 1985. We do note the company was cited for failing to monitor lead levels in the foundry within the

preceding twelve months as required by Section 1910.1025(d)(2), Title 29, C.F.R., but as late as January 1983, lead levels in the foundry were found to be within permissible limits. It is also undisputed that previous OSHA inspections had not revealed excessive lead levels. In light of these facts, we find no evidence the employer knew, with substantial certainty, that the employees would suffer harm from conditions in the foundry. Thus, we find summary judgment was proper on the intentional tort claims.

■ Finally, we reject the employees' argument that the court improperly granted summary judgment on their claim for medical removal protection benefits as provided in Section 1910.1025(d), Title 29, C.F.R. As previously noted, OSHA does not provide for the private enforcement of OSHA regulations. *Russell, supra.* Rather, Section 658, Title 29, U.S.Code grants sole authority to enforce OSHA to the Secretary of Labor. This authority includes the power to enforce regulations such as the medical removal protection benefits provision. See, *e.g., United Steel Workers of America v. Schuylkill Metals* (C.A.5, 1987), 828 F.2d 314. Thus, summary judgment was proper on this claim.

Accordingly, the employees' sole assignment of error is overruled and the trial court's judgment affirmed.

*Judgment affirmed.*

PATTON, C.J., and PARRINO, J., concur.

THOMAS J. PARRINO, J., retired, of the Eighth Appellate District, sitting by assignment.