FELDEN, Appellee and Cross–Appellant,

v.

ASHLAND CHEMICAL COMPANY, INC., Appellant and Cross–Appellee, et al.

[Cite as *Felden v. Ashland Chem. Co., Inc.* (1993), 91 Ohio App.3d 48.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 64313, 64346.

Decided Nov. 1, 1993.

50

*Jeffrey H. Friedman* and *Lisa M. Gerlack,* for appellee and cross-appellant.

*Porter, Wright, Morris & Arthur, Ralph Streza* and *Terrance M. Miller,* for appellant and cross-appellee.

DAVID T. MATIA, Judge.

Defendant-appellant and cross-appellee, Ashland Chemical Company, Inc. ("Ashland"), appeals from a jury verdict which was rendered on behalf of plaintiff-appellee and cross-appellant, Walter Felden, in the amount of $3.5 million. The appeal, as raised by Ashland, involves the issues of denial of a motion for a directed verdict/judgment notwithstanding the verdict, denial of a motion for summary judgment, improper evidentiary rulings which allowed the admission of remedial measures testimony and hearsay testimony, verdict against the weight of the evidence, denial of a motion for new trial, improper jury instructions and the award of prejudgment interest.

Walter Felden has filed a cross-appeal. Felden's cross-assignment of error involves the issue of the deduction of collateral benefits from the $3.5 million verdict that was rendered by the jury.

The judgment of the trial court is affirmed.

## I

## THE FACTS

### A. FELDEN IS INJURED WHILE DISCHARGING HIS DUTIES AS AN EMPLOYEE

Walter Felden was employed by Ashland as a kettle operator at a chemical plant located at 2191 West 110th Street, Cleveland, Ohio. As part of his employment, Felden was required to mix various batches of highly acidic and caustic chemicals in order to produce resins that were used to manufacture metal

castings. On August 24, 1989, Felden was combining seven acidic, caustic or alkali raw materials in order to produce a product called "Chemrez 57962." In need of formic acid, Felden traveled to the "telephone" building. While transporting two fifty-five gallon drums of formic acid on a forklift to the kettle house, Felden struck a concrete-filled steel post which was located in the middle of the plant driveway.

The collision with the steel post resulted in a rupture of one of the fifty-five gallon drums of formic acid. Felden was sprayed by the escaping acid and suffered third-degree burns to twenty-three percent of his body (face, eyes, arms, leg and side) plus loss of sight.

## B. FELDEN FILES COMPLAINT BASED UPON CLAIM OF AN INTENTIONAL TORT

On June 21, 1990, Felden filed a complaint in the Cuyahoga County Court of Common Pleas. The original complaint of Felden, as well as two subsequent amended complaints, raised the claim of an intentional tort against Ashland. On October 25, 1990, Ashland filed a motion for summary judgment. On June 28, 1991, the trial court denied Ashland's motion for summary judgment.

## C. THE JURY TRIAL AND VERDICT FOR FELDEN

On June 8, 1992, a jury trial was commenced with regard to Felden's claim of an intentional tort. At the conclusion of the trial, the jury returned a verdict on behalf of Felden in the amount of $3.5 million. In addition, the jury answered six interrogatories as follows:

1. "Do you find that Plaintiff Walter Felden has proved by clear and convincing evidence that he is entitled to punitive damages, as defined by the court.

"Answer: No"

2. "Has the Plaintiff proved by a greater weight or preponderance of the evidence that Ashland Chemical, Inc. intended, as defined by the court, to injure Walter Felden?

"Answer: Yes"

3. "Did Ashland Chemical, Inc. have knowledge of the existence of a dangerous instrumentality within its business operations?

"Answer: Yes"

4. "Do you find that Ashland Chemical, Inc. knew that injury to Walter Felden was substantially certain to result from his normal activities as a kettle operator at the Ashland plant?

"Answer: Yes"

5. "Do you find that Plaintiff has proved that Ashland Chemical, Inc. with its knowledge of the existence of a dangerous instrumentality within its business operations required Walter Felden to continue to perform a dangerous task at the Ashland facility?

"Answer: Yes"

6. "Do you find that Plaintiff has established that Ashland Chemical, Inc.'s intentional tort, as defined by the court, was the proximate cause of Plaintiff's injuries?

"Answer: Yes"

## D. THE TRIAL COURT REDUCES THE JURY'S AWARD

On July 9, 1992, the trial court reduced the general verdict of $3.5 million through a deduction of $296,772.44 which represented collateral benefits received by Felden from participation in the workers' compensation program. In addition, the trial court granted prejudgment interest on behalf of Felden and also denied Ashland's (1) motion for judgment notwithstanding the verdict; (2) motion for new trial; and (3) motion for remittitur.

## E. THE TIMELY APPEAL OF BOTH ASHLAND AND FELDEN

Thereafter, Ashland filed a timely appeal and has raised nine assignments of error. Felden filed a timely cross-appeal and has raised one cross-assignment of error.

## II

Ashland's initial assignment of error is that:

"The trial court erred by denying Ashland a directed verdict or judgment notwithstanding the verdict."

## A. THE ISSUE RAISED: TRIAL COURT ERRED BY FAILING TO GRANT ASHLAND'S MOTION FOR DIRECTED VERDICT OR JNOV

Ashland, through its initial assignment of error, argues that the trial court erred by failing to grant a motion for a directed verdict or a motion for judgment notwithstanding the verdict on behalf of Ashland. Specifically, Ashland argues that the evidence and testimony adduced at trial, even when construed most favorably on behalf of Felden, fails to support a finding of an intentional tort

which required the trial court to either grant Ashland a motion for direct verdict or a motion for judgment notwithstanding the verdict.

The first assignment of error as raised by Ashland is not well taken.

## B. THE TRIPARTITE TEST APPLICABLE TO AN INTENTIONAL TORT CLAIM

The Supreme Court of Ohio has established a three-part test which must be applied in order to determine whether an employer has committed an intentional tort against one of its employees:

"Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed.1984), in order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)" *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

## C. THE MOTION FOR A DIRECTED VERDICT AS MADE BY ASHLAND

At the close of Felden's case-in-chief, Ashland moved for directed verdict. The trial court denied the motion for directed verdict. At the close of all testimony, Ashland failed to renew its motion for directed verdict. The failure of Ashland to renew its motion for directed verdict at the close of all evidence constitutes a waiver of any error associated with the trial court's denial of the initial motion for directed verdict.

"In the recent case of *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464, we reaffirmed the long-standing rule that a motion for directed verdict which is denied at the close of the plaintiff's evidence must be renewed at the close of all evidence in order to preserve the error for appeal. See *Cincinnati Traction Co. v. Durack* (1908), 78 Ohio St. 243, 85 N.E. 38; *Zanesville v. Stotts* (1913), 88 Ohio St. 557, 106 N.E. 1051; *Youngstown & Suburban Ry. Co. v. Faulk* (1926), 114 Ohio St. 572, 151 N.E. 747. Neman acknowledges that this rule governs the instant case, but asks that we 'modify' it

and hold that his JNOV motion was equivalent to a renewal of the motion for directed verdict.

"The record reveals that, though Neman raised some of the same issues in both motions, they are not identical. While Neman asserted at all stages of the proceeding that there was no proof of reliance or damages, his other arguments changed at each turn. Further, while the same standard is used to resolve both types of motion, see, *e.g., Cardinal v. Family Foot Care Centers, Inc.* (1987), 40 Ohio App.3d 181, 532 N.E.2d 162, a directed verdict motion made at the close of plaintiff's evidence is.evaluated on the evidence in the plaintiff's case in chief, see *Helmick, supra* [39 Ohio St.3d], at 73, 529 N.E.2d at 466, while a JNOV motion is evaluated on all the evidence presented at trial. Thus, it is clear that an appeal from the ruling on a directed verdict motion and an appeal from the ruling on a JNOV motion are sufficiently different, both as a general proposition and on the specific facts before us, that one is not a substitute for the other." (Footnote omitted.) *Chem. Bank of New York v. Neman* (1990), 52 Ohio St.3d 204, 206, 556 N.E.2d 490, 493–494.

## D.  THE MOTION FOR JNOV AS MADE BY ASHLAND

Further review of the record fails to disclose that the trial court erred as a result of denying Ashland's motion for judgment notwithstanding the verdict ("JNOV"). This court must apply the following standard of review:

"The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 430, 344 N.E.2d 334, 338; *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 522 N.E.2d 511.

Upon examination of the evidence adduced at trial in a light most favorable to Felden, this court finds that there existed substantial evidence to support Felden's claim of an intentional tort on the part of Ashland. Evidence adduced at trial revealed that Ashland knew that the concrete-filled steel post, which was located in the middle of a heavily traveled driveway, was a hazard and that injury to an employee was substantially certain to occur. This evidence consisted of the following:

A. William Coleman, a traffic/industrial investigator, testified as to the location of the steel post involved in Felden's accident and other similar posts located throughout the plant.

B. James Boddy, a retired shift foreman, testified that: (1) the steel post involved in Felden's accident was originally constructed in order to protect a dike which surrounded a tank farm; (2) although the dike was removed, the steel post was allowed to remain; (3) once the dike was removed, the steel post served no purpose; (4) frequent forklift activity and travel occurred in the area of the steel post; (5) three other accidents that involved the steel post and forklifts occurred prior to Felden's collision; (6) all plant supervisors, including Jack Matson, Cole Demeter, and Joan Schafer, had knowledge of the prior three forklift accidents; (7) Jack Matson was asked to remove the steel post prior to Felden's accident; (8) Jack Matson refused to remove the post and stated: "That post has been here for 30 fucking years and it will stay."; (9) during safety meetings, requests were made to remove the steel post and it was also revealed that it was impossible to see the steel post as a result of sun glare; and (10) Jack Matson was informed that the steel post was a hazard.

C. William Fedash, an employee and vice-president of the local union, testified that: (1) the steel post was originally installed in order to protect a dike from damage; (2) the steel post, as a hazard, was brought to the attention of plant managers at monthly safety meetings; (3) complaints of difficulty seeing the steel post and sun glare were made to plant managers; and (4) when transporting material with a forklift, view was obstructed.

D. Ervin Metlock, an employee and president of the local union, testified that: (1) many discussions were held with plant managers concerning past accidents and removal of the steel post; (2) discussions, with regard to the steel post, were "heated"; (3) the potential of future accidents was discussed with plant managers; and (4) plant managers were aware of other accidents and yet failed to remove the steel post.

E. Frank Fazio, an employee, testified that: (1) the frequency of forklift traffic in the area of the steel post was great; (2) numerous complaints, with regard to the steel post, were made to plant managers; and (3) when transporting barrels on the forklift, the vision of the driver was impaired.

F. Michael Litwin, an employee, testified that: (1) while operating a forklift and carrying a cylinder of gas, he collided with the steel post; (2) plant managers were asked to remove the steel post; and (3) seven or eight other collisions with the steel post occurred prior to Felden's accident.

G. Larry Morley, an employee, testified that: (1) forklifts constantly traveled in the area of the steel post; (2) several complaints were made to plant managers

as to whether the steel post was a hazard; and (3) the witness almost had a collision with the steel post.

H. Steven Ziemba, a safety consultant/engineer, testified that: (1) the steel post was not a safety device which served a useful function; (2) the steel post was a hazard and constituted an unsafe condition; (3) an accident involving the steel post was substantially certain to occur; and (4) Felden did not see the post prior to the accident and struck it head on.

I. Richard Murray, a mechanical engineer and qualified expert, testified that: (1) the steel post did not serve as an effective safety measure; (2) the steel post merely sat in the middle of the driveway; (3) it was very unusual to find such a steel post in the middle of a driveway; (4) the steel post was not an effective barrier; (5) the steel post was a hazard; (6) it was foreseeable that someone would collide with the steel post and suffer personal injury; (7) the steel post was a hazard; (8) it was foreseeable that an employee would collide with the steel post; and (9) Ashland should have removed the steel post since it knew that "sooner or later somebody's going to hit it."

## E. THE TRIAL COURT PROPERLY DENIED ASHLAND'S JNOV

Viewed in a light most favorable to Felden, the testimony and evidence adduced at trial on behalf of Felden were reliable and probative and showed that Ashland intentionally acted in not removing the steel post despite a known threat of harm to its employees. Felden demonstrated, by a preponderance of the evidence, that Ashland or its agents manifested an intent to injure the employee and the intent included the knowledge and expectation that such an injury was substantially certain to occur. Cf. *Howard v. Columbus Prod. Co.* (1992), 82 Ohio App.3d 129, 611 N.E.2d 480; *Bitzer v. Lincoln Elec. Co.* (1990), 67 Ohio App.3d 53, 585 N.E.2d 978.

Thus, the trial court properly denied Ashland's motion for judgment notwithstanding the verdict and the first assignment of error of Ashland is not well taken.

## III

The second assignment of error of Ashland is that:

"The trial court erred by denying Ashland summary judgment."

## A. THE ISSUE RAISED: TRIAL COURT ERRED BY DENYING ASHLAND'S MOTION FOR SUMMARY JUDGMENT

Ashland, through its second assignment of error, argues that the trial court erred as a result of failing to grant Ashland's motion for summary judgment.

Specifically, Ashland argues that no genuine issues of material fact existed as to Felden's claim of an intentional tort and that Ashland was entitled to summary judgment as a matter of law.

Ashland's second assignment of error is not well taken.

## B. THE TRIAL COURT PROPERLY DENIED ASHLAND'S MOTION FOR SUMMARY JUDGMENT

Civ.R. 56 provides that a summary judgment may be granted for a moving party only when there exists no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

■ When viewed in a light most favorable to Felden, the nonmoving party, the record demonstrates that genuine issues of material fact did exist for the trier of fact as to whether Ashland subjected Felden to a dangerous work place and that harm was substantially certain to occur to employees. A genuine issue of material fact did exist as to each of the three prongs of the *Van Fossen* test and thus Ashland was not entitled to summary judgment as a matter of law. *Clark v. Energy Unlimited, Inc.* (1990), 69 Ohio App.3d 533, 591 N.E.2d 279; *Sibert v. Columbus* (1990), 68 Ohio App.3d 317, 588 N.E.2d 252.

The second assignment of error of Ashland is not well taken.

## IV

The third assignment of error of Ashland is that:

"The trial court's admission of irrelevant subsequent remedial measures was erroneous and prejudicial."

## A. THE ISSUE RAISED: TRIAL COURT ERRED BY ALLOWING EVIDENCE AT TRIAL AS TO REMEDIAL MEASURES TAKEN BY ASHLAND

■ Ashland, through its third assignment of error, argues that the trial court erred as a result of allowing testimony at trial as to remedial measures taken by Ashland subsequent to Felden's accident. Specifically, Ashland argues that Evid.R. 407 prohibits the introduction of any evidence as to the removal of the steel post and other remedial measures which occurred after Felden's accident.

Ashland's third assignment of error is not well taken.

## B. EVIDENTIARY RULINGS ARE WITHIN THE SOUND DISCRETION OF THE TRIAL COURT

The Supreme Court of Ohio has firmly established that it is within the sound discretion of the trial court to determine the relevancy of evidence and whether the evidence will assist the trier of fact in determining a factual issue. *State v. Williams* (1983), 4 Ohio St.3d 53, 4 OBR 144, 446 N.E.2d 444. This court will not reverse a trial court's ruling on the admissibility of evidence absent a showing of abuse of discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 17 O.O.3d 98, 407 N.E.2d 490.

## C. EVID.R. 407 AND REMEDIAL MEASURES

In the case *sub judice*, Ashland sought the exclusion of any testimony or evidence per Evid.R. 407 which related to the removal of the steel post, the installation of Plexiglas shields on the forklifts, retraining of employees and installation of additional safety showers. Evid.R. 407, which deals with the general inadmissibility of remedial measures, provides that:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

Evid.R. 407 prohibits the admission at trial of any remedial measure which is offered to prove negligence or culpable conduct. Evid.R. 407, however, does not prohibit testimony as to remedial measures when offered to show ownership or control, the feasibility of precautionary measures or impeachment purposes. Cf. *Caggiano v. Medtronic, Inc.* (1988), 47 Ohio App.3d 29, 547 N.E.2d 389; *E. Ohio Gas Co. v. Van Orman* (1931), 41 Ohio App. 56, 179 N.E. 147; *Ashtabula v. Bartram* (1888), 3 Ohio C.C. 640, 2 Ohio C.D. 372.

## D. EVIDENCE OF ASHLAND'S REMEDIAL MEASURES WERE ADMISSIBLE AT TRIAL

The decision of the trial court to allow the admission of testimony as to remedial measures taken by Ashland following Felden's accident was proper since such testimony challenged the credibility of Ashland as to its position that the steel post was a safety device. Other remedial testimony was admissible under the exception of feasibility of precautionary measures. Regardless of what exception was used to justify admission of the remedial testimony, such testimony was not used by Felden to establish negligence or culpable conduct on the part of

Felden. Thus, the trial court did not abuse its discretion in allowing the admission of testimony which related to remedial measures taken by Ashland following Felden's accident.

Ashland's third assignment of error is not well taken.

## V

Ashland's fourth assignment of error is that:

"The trial court's admission of incompetent hearsay and irrelevant reports of other dissimilar accidents were erroneous and prejudicial."

### A. THE ISSUE RAISED: TESTIMONY AS TO FOUR OTHER FORKLIFT COLLISIONS WITH STEEL POST WAS IMPROPERLY ADMITTED BY TRIAL COURT

Ashland, through its fourth assignment of error, argues that the trial court erred as a result of allowing the admission of testimony which related to four other collisions with the steel post that occurred prior to Felden's accident. Specifically, Ashland argues that the four other accidents or collisions were not substantially similar to Felden's collision and thus were not admissible at trial. Ashland also argues that testimony with regard to four other accidents constituted inadmissible hearsay.

Ashland's fourth assignment of error is not well taken.

### B. THE STANDARD OF REVIEW APPLICABLE TO THE ADMISSIBILITY OF PRIOR OR SIMILAR ACCIDENTS

The Supreme Court of Ohio, in *Renfro v. Black* (1990), 52 Ohio St.3d 27, 556 N.E.2d 150, examined the issue of admissibility of prior accidents or occurrences and held that:

"The law in the area of admissibility of 'prior accidents' or occurrence evidence was succinctly stated in *McKinnon v. Skil Corp.* (C.A.1, 1981), 638 F.2d 270. There, the court considered admissibility of prior accident evidence in a products liability action concerning an allegedly defective Skil saw. The plaintiff attempted to introduce answers to interrogatories regarding prior personal injury accidents involving the Skil saw. The answers did not indicate how the injuries occurred or whether they resulted from defective lower blade guards. Plaintiff contended that the interrogatory answers were admissible on Skil's knowledge of prior accidents relevant to the duty to warn, to establish evidence of the existence of defect, causation, and negligent design, and to attack the credibility of the defendant's expert witness. The court held that '[e]vidence of prior accidents is admissible on the first four issues only if the proponent of the evidence shows

that the accidents occurred under circumstances substantially similar to those at issue in the case at bar. * * * ' (Citations omitted.) *Id.* at 277. See *Hale v. Firestone Tire & Rubber Co.* (C.A.8, 1985), 756 F.2d 1322, 1332; *P.B. Mutrie Motor Transp., Inc. v. Interchemical Corp.* (C.A.1, 1967), 378 F.2d 447, 450–451 (substantial identity); *Jaffe v. Powell* (1929), 121 Ohio St. 355, 169 N.E. 31, syllabus; *Cottman v. Federman Co.* (1942), 71 Ohio App. 89, 93, 25 O.O. 435, 437, 47 N.E.2d 1009, 1011; *Robitaille v. Netoco Community Theatres of North Attleboro, Inc.* (1940), 305 Mass. 265, 25 N.E.2d 749.

" * * *

"A trial judge has wide discretion when determining the admissibility of such evidence, and will not be disturbed on appeal absent a clear showing of abuse of discretion. *Worsham v. A.H. Robins Co.* (C.A.11, 1984), 734 F.2d 676, 686. On review of the substantial record in this case, we find no abuse of discretion and will not substitute our judgment for that of the trial court on this issue." *Renfro v. Black, supra,* at 31–32, 556 N.E.2d at 154–155.

## C. THE FOUR OTHER ACCIDENTS WERE SIMILAR AND THUS TESTIMONY WAS PROPERLY ADMITTED BY TRIAL COURT

■ Herein, testimony with regard to four other accidents involved the same steel post and also involved forklifts which were similar in nature to the forklift used by Felden prior to his accident. Clearly, these four other accidents were substantially similar to Felden's accident and were thus admissible. In addition, testimony with regard to the four previous accidents was not hearsay since the testimony was directly related to Ashland's knowledge of the steel post as a hazard and was not offered to prove that the facts they asserted were true. Evid.R. 801(A); cf. *Miles v. Gen. Tire & Rubber Co.* (1983), 10 Ohio App.3d 186, 10 OBR 258, 460 N.E.2d 1377.

Therefore, the trial court did not err as a result of allowing testimony at trial with regard to four other similar accidents. Ashland's fourth assignment of error is not well taken.

## VI

Ashland's fifth assignment of error is that:

"The trial court's admission of the OSHA citation and the entire OSHA investigation file was erroneous and prejudicial."

## A. THE ISSUE RAISED: THE TRIAL COURT ERRED BY ALLOWING EVIDENCE AT TRIAL AS TO OSHA VIOLATIONS AND OSHA INVESTIGATION FILE

■ Ashland, through its fifth assignment of error, argues that the trial court erred by allowing the admission of an OSHA investigation file. Specifically,

Ashland argues that the OSHA investigation file and testimony with regard to violation of OSHA regulations constituted inadmissible hearsay and were not admissible under any exception.

Ashland's fifth assignment of error is not well taken.

## B. THE VIOLATION OF OSHA REGULATIONS PROPERLY ADMITTED

Ashland's violation of OSHA regulations was directly related to knowledge of unsafe working conditions and thus was not inadmissible per Evid.R. 403(A) since its probative value far outweighed any possible prejudice. *Emminger v. Motion Savers, Inc.* (1990), 60 Ohio App.3d 14, 572 N.E.2d 257; *Smith v. Raymond Corp.* (Oct. 25, 1990), Cuyahoga App. No. 57670, unreported, 1990 WL 161996.

## C. THE OSHA INVESTIGATION FILE PROPERLY ADMITTED

In addition, the OSHA investigation file was admissible at trial pursuant to the public records and reports hearsay exception as contained in Evid.R. 803(8), which provides that:

*"Public records and reports.* Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness." See *Leskovac v. Ohio Dept. of Transp.* (1990), 71 Ohio App.3d 22, 593 N.E.2d 9; *Sanders v. Hairston* (1988), 51 Ohio App.3d 63, 554 N.E.2d 951; *Cincinnati Ins. Co. v. Volkswagen of Am., Inc.* (1987), 41 Ohio App.3d 239, 535 N.E.2d 702.

In addition, the OSHA investigation file was admissible pursuant to the business records exception to the hearsay rule as contained in Evid.R. 803(6). See *Frazier v. Royal Brass Mfg. Co.* (1990), 70 Ohio App.3d 748, 591 N.E.2d 1368; *Cline v. Am. Aggregates Corp.* (1989), 64 Ohio App.3d 503, 582 N.E.2d 1.

Thus, the OSHA investigation file and other testimony which related to violation of OSHA regulations was properly admitted by the trial court and the fifth assignment of error is not well taken.

## VII

Ashland's sixth assignment of error is that:

"The jury verdict was against the manifest weight of the evidence."

## A. THE ISSUE RAISED: JURY VERDICT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

Ashland, through its sixth assignment of error, argues that the jury's verdict and resulting judgment were against the manifest weight of the evidence. Specifically, Ashland argues that the verdict was not supported by credible evidence and resulted in substantial injustice.

Ashland's sixth assignment of error is not well taken.

## B. THE STANDARD OF REVIEW APPLICABLE TO A MANIFEST WEIGHT OF THE EVIDENCE ARGUMENT

The Supreme Court of Ohio, in *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, examined the issue of manifest weight and held that:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *Id.* at syllabus.

In addition, a claim that a verdict is against the manifest weight of the evidence will support a reversal of a verdict by this court "only when the verdict is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice * * *." *Royer v. Bd. of Edn.* (1977), 51 Ohio App.2d 17, 20, 5 O.O.3d 138, 140, 365 N.E.2d 889, 892.

## C. THE VERDICT OF THE JURY WAS NOT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

In the present appeal, credible evidence was presented at trial on behalf of Felden which supports the jury's verdict. The credibility of all witnesses, the weight to be given to the testimony of the witnesses and any resolution of conflicts in the evidence are questions of fact for the jury. *Hardiman v. Zep Mfg. Co.* (1984), 14 Ohio App.3d 222, 14 OBR 250, 470 N.E.2d 941. Finally, the verdict of the jury cannot be classified as a violation of substantial justice.

Therefore, the jury's verdict and the resulting judgment were not against the manifest weight of the evidence. Ashland's sixth assignment of error is not well taken.

## VIII

Ashland's seventh assignment of error is that:

"The trial court erred by not granting Ashland a new trial due to excessive damages given under the influence of passion or prejudice, or by not considering a remititur [*sic*]."

## A. THE ISSUE RAISED: TRIAL COURT ERRED BY FAILING TO GRANT ASHLAND A NEW TRIAL

Ashland, through its seventh assignment of error, argues that the trial court erred by failing to grant Ashland's motion for new trial. Specifically, Ashland argues that the jury's verdict of $3.5 million was excessive and was clearly the result of passion or prejudice. Ashland argues that the excessive verdict mandated a new trial or remittitur.

Ashland's seventh assignment of error is not well taken.

## B. MOTION FOR NEW TRIAL AS BASED UPON EXCESSIVE JURY VERDICT

In *Youssef v. Parr, Inc.* (1990), 69 Ohio App.3d 679, 591 N.E.2d 762, this court examined the issue of a new trial as based upon a claim of an excessive jury verdict and held that:

"In a personal injury suit, a damage award should not be set aside unless the award is so excessive that it appears to have been awarded as a result of passion or prejudice or unless it is manifestly against the weight of the evidence. *Hancock v. Norfolk & Western Ry. Co.* (1987), 39 Ohio App.3d 77, 85, 529 N.E.2d 937, 945; *Wilson [v. Dixon* (Mar. 29, 1990), Cuyahoga App. No. 56788, unreported], *supra,* at 4 [1990 WL 37398]; *Stalla v. Ohio Bell Tel. Co.* (Mar. 15, 1990), Cuyahoga App. No. 56512, unreported, at 14, 1990 WL 28817; *Toledo, Columbus & Ohio River RR. Co. v. Miller* (1923), 108 Ohio St. 388, 140 N.E. 617, paragraph three of the syllabus; *Litchfield v. Morris* (1985), 25 Ohio App.3d 42, 25 OBR 115, 495 N.E.2d 462, syllabus.

" * * *

"This panel may not decide if we would set aside a verdict were we presiding at trial, but must determine whether the damages awarded are so high that to permit the award to stand would be a denial of substantial justice. *Hancock, supra; Wilson, supra.* * * * In view of the uncontroverted evidence regarding Nasser's injuries, we cannot say that the verdict is against the weight of the evidence or that the jury was influenced by passion and prejudice." *Id.* at 694, 591 N.E.2d at 772.

## C. THE VERDICT OF THE JURY WAS NOT EXCESSIVE

The record before this court clearly indicates that Felden suffered permanent injuries which have substantially diminished his ability to engage in physical activity and return to his former position of employment as a kettle operator. Additionally, the record is replete with evidence of the severity of Felden's injuries and the intense suffering experienced by Felden which resulted from acid burns that covered twenty-three percent of his body. We find that the verdict of the jury was not the result of passion or prejudice and that the damages awarded by the jury did not constitute a denial of substantial justice. In addition, Ashland was not entitled to a remittitur, since the verdict of the jury was not excessive. See, *e.g., Chester Park Co. v. Schulte* (1929), 120 Ohio St. 273, 166 N.E. 186; *Larrissey v. Norwalk Truck Lines, Inc.* (1951), 155 Ohio St. 207, 44 O.O. 238, 98 N.E.2d 419; *Tully v. Mahoning Express Co., Inc.* (1954), 161 Ohio St. 457, 53 O.O. 354, 119 N.E.2d 831.

Therefore, the trial court did not err in denying Ashland's motion for new trial or remittitur and the seventh assignment of error is not well taken.

### IX

Ashland's eighth assignment of error is that:

"The trial court erred to Ashland's substantial prejudice in giving an incorrect instruction on the standard of liability."

## A. THE ISSUE RAISED: IMPROPER JURY INSTRUCTIONS

Ashland, through its eighth assignment of error, argues that the trial court's jury instruction was defective. Specifically, Ashland argues that the trial court's jury instruction with regard to knowledge and substantial certainty of injury required an instruction as to "Ashland's actual knowledge of the exact dangers giving rise to plaintiff's injuries."

Ashland's eighth assignment of error is not well taken.

## B. ASHLAND WAIVED ERROR AS TO JURY INSTRUCTIONS

■■■ An initial review of the record reveals that although the trial court provided an opportunity to object to the jury instruction, Ashland failed to raise an objection:

"Now, before I go on to explain to the jury the procedure we follow for the deliberations, is there anything by way of addition to, subtraction to or amendment to the charge as given?

"What says the plaintiff?

"MR. FRIEDMAN: None, your Honor. I am satisfied.

"THE COURT: What says the defendant?

"MR. MILLER: None, your Honor."

Ashland's failure to object to the jury instruction of the trial court constitutes a waiver of the claimed error. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001.

## C. THE TRIAL COURT DID PROPERLY INSTRUCT THE JURY

■■■ Notwithstanding Ashland's failure to preserve any error associated with the trial court's instruction, a substantive review demonstrates that the trial court did properly instruct the jury as to each of the three elements which comprise a claim of an intentional tort on the part of an employer. A trial court need not provide the jury with a verbatim recitation of a proposed jury instruction regardless of the fact that the requested instruction states an applicable rule of law. *State v. Scott* (1987), 41 Ohio App.3d 313, 535 N.E.2d 379. The trial court need only deliver the substance of the proposed jury instruction. *Echols v. Vernick* (June 11, 1987), Cuyahoga App. No. 52101, unreported, 1987 WL 12603.

■■■ Herein, the trial court properly instructed the jury with regard to the tripartite test applicable to an intentional tort as established in *Van Fossen* by the Supreme Court of Ohio. Finally, Ashland's reliance upon *Gray v. Continental Alloy Corp.* (1990), 70 Ohio App.3d 425, 591 N.E.2d 359, is misplaced. *Gray* is but a restatement of *Van Fossen* and dealt only with regard to whether the trial court properly granted a motion for summary judgment as to an intentional tort claim. *Gray* did not expand the original tripartite test of *Van Fossen* as urged by Ashland. *Youssef v. Parr, Inc., supra.*

Thus, the trial court properly instructed the jury with regard to the claim of an intentional tort and Ashland's eighth assignment of error is not well taken.

## X

Ashland's ninth assignment of error is that:

"The trial court abused its discretion by awarding pre–judgment interest."

## A. THE ISSUE RAISED: TRIAL COURT ERRED BY GRANTING FELDEN PREJUDGMENT INTEREST

■■■ Ashland, through the ninth assignment of error, argues that the trial court erred as a result of granting Felden's motion for prejudgment interest. Specifically, Ashland argues that Felden was not entitled to prejudgment interest

per R.C. 1343.03(C), since Ashland had not failed to make a "good faith effort to settle" prior to trial.

Ashland's ninth assignment of error is not well taken.

## B. THE STANDARD OF REVIEW APPLICABLE TO PREJUDGMENT INTEREST AWARD

R.C. 1343.03(C) allows the award of prejudgment interest:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money *failed to make a good faith effort to settle the case* and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." (Emphasis added.)

In *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, the Supreme Court of Ohio construed the term "good faith effort to settle" and established that:

"A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." *Kalain v. Smith, supra,* syllabus.

The determination of whether a party has "failed to make a good faith effort to settle" is within the sound discretion of the trial court. *Worrell v. Multipress, Inc.* (1989), 45 Ohio St.3d 241, 543 N.E.2d 1277; *Cox v. Fisher Fazio Foods, Inc.* (1984), 13 Ohio App.3d 336, 13 OBR 414, 469 N.E.2d 1055.

## C. THE AWARD OF PREJUDGMENT INTEREST WAS PROPER

Upon review of the hearing held before the trial court and the memorandum filed in support and opposition to the motion for prejudgment interest, this court finds that the trial court did not abuse its discretion in granting prejudgment interest on behalf of Felden. The record does demonstrate a lack of good faith since Ashland (1) failed to cooperate in all discovery proceedings, (2) did not rationally evaluate its potential liability and risks, and (3) did not make a good faith monetary settlement offer in light of its position on the issue of liability. *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 543 N.E.2d 464;

*Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 19 OBR 123, 482 N.E.2d 1248. Therefore, the trial court did not err in granting prejudgment entered on behalf of Felden. Ashland's ninth assignment of error is not well taken.

## XI

Felden's sole assignment of error, as raised upon a cross-appeal, is that:

"The trial court erred by concluding that Ohio Revised Code § 2317.45 applies to intentional tort actions and deducting collateral benefits from the $3,500,000.00 jury verdict rendered in favor of cross–appellant Walter Feldon."

### A. THE ISSUE RAISED: TRIAL COURT ERRED BY DEDUCTING COLLATERAL BENEFITS FROM JURY'S AWARD

Felden, through his sole cross-assignment of error, argues that the trial court erred by deducting workers' compensation benefits in the amount of $296,772.44 plus future workers' compensation benefits from the $3.5 million jury verdict. Specifically, Felden argues that R.C. 2317.45, which mandates the deduction of collateral benefits such as workers' compensation benefits from a jury's monetary award, is unconstitutional.

Felden's sole cross-assignment of error is not well taken.

### B. R.C. 2317.45 IS CONSTITUTIONAL AND MANDATES DEDUCTION OF COLLATERAL BENEFITS FROM A JURY AWARD

R.C. 2317.45, which deals with the deduction of collateral benefits in a tort action, provides in pertinent part that:

"(A)(1) As used in this section:

"(a) 'Collateral benefits' means benefits that a plaintiff has received, or may be entitled to receive within the next sixty months after the entry of judgment, as a result of an injury, death, or loss to person or property that is a subject of a tort action, from any of the following:

"(i) The government of the United States, or any state or any political subdivision of any state, under a program that provides medical, hospital, sickness, dental, or other health benefits, including, but not limited to, social security, medicare, and medicaid;

"(ii) A federal, state, or political subdivision of a state disability income or *workers' compensation program,* or a wage continuation program, of an employer;

" * * * *

"(c) 'Tort action' means a civil action for damages for injury, death, or loss to person or property. 'Tort action' includes a product liability claim that is subject to sections 2307.71 to 2307.80 of the Revised Code, but does not include a civil action for damages for a breach of contract or another agreement between persons.

" * * *

"(B)(1) * * *

"(2) * * *

" * * *

"(c) Prior to entering judgment for the plaintiff, [the court shall] do * * * the following:

"(i) Subtract from the compensatory damages that the plaintiff otherwise would be awarded the amount of any disclosed collateral benefits in relation to which both requirements of division (B)(2)(a) of this section are satisfied[.]" (Emphasis added.)

This court is aware of the holding of *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, wherein the Supreme Court of Ohio held in paragraph three of the syllabus that "[a]n employer who has been held liable for an intentional tort is not entitled to a setoff of the award in the amount of workers' compensation benefits received by the employee or his representative." See, also, *Bitzer v. Lincoln Elec. Co.* (1990), 67 Ohio App.3d 53, 585 N.E.2d 978.

R.C. 2317.45 was enacted subsequent to *Jones* by the state legislature as a part of the Ohio Tort Reform Act and explicitly defines a "tort action" as any civil action for damages which results from injury, death or loss to a person or property. An intentional tort clearly fits within the parameters of a "tort action" as defined by R.C. 2317.45. In addition, this court, in two recent decisions, has upheld the constitutionality of R.C. 2317.45 and has firmly established that collateral benefits received by a party must be deducted from a jury verdict. *Turk v. Trolley Tours of Cleveland, Inc.* (Aug. 19, 1993), Cuyahoga App. Nos. 62964, 63087 and 64764, unreported, 1993 WL 317536, jurisdictional motion allowed in (1994), 68 Ohio St.3d 1429, 624 N.E.2d 1066; *May v. Tandy Corp.* (June 3, 1993), Cuyahoga App. No. 62679, unreported, 1993 WL 190293, jurisdictional motion allowed in (1993), 67 Ohio St.3d 1471, 619 N.E.2d 1027. Other appellate jurisdictions within the state of Ohio have also upheld the constitutionality of R.C. 2317.45 and require the deduction of collateral benefits from a jury award in a tort action. *Sorrell v. Thevenir* (Sept. 30, 1992), Gallia App. No. 91–CA–4, unreported, 1992 WL 276566, jurisdictional motion allowed in (1993), 66 Ohio St.3d 1412, 607 N.E.2d 12; *Cook v. Wineberry Deli, Inc.* (July 17, 1991), Summit App. No. 14841, unreported, 1991 WL 131485.

Thus, the trial court did not err as a result of deducting workers' compensation benefits plus future workers' compensation benefits from the jury's monetary award of $3.5 million. Felden's sole cross-assignment of error is not well taken.

The verdict of the jury and the judgment of the trial court, in the amount of $3.5 million less collateral benefits received by Felden, is affirmed. The judgment of the trial court, which granted prejudgment entered on behalf of Felden, is affirmed.

*Judgment affirmed.*

JOHN F. CORRIGAN, P.J., and NUGENT, J., concur.