JOURNAL ENTRY AND OPINION
{¶ 1} These consolidated appeals arise from a jury verdict following convicting Terrance Donald of aggravated murder[1] and aggravated robbery.[2] He appeals on speedy trial grounds and challenges, among other errors, the sufficiency and manifest weight of the evidence, the judge's refusal to admit the testimony of a material witness, prosecutorial misconduct, and failure to advise of post-release control. We affirm the conviction, but vacate the sentence and remand for resentencing.
 {¶ 2} From the record we glean the following: Sometime around midnight in early December 2001, Terrance Donald and Lamar Brooks picked up James Marzett and Marcus Andrews and proceeded to drive around the area of East 116th Street and Miles in Garfield Heights, smoking marijuana and stopping at houses where Brooks, a purported drug dealer, appears to have sold drugs.
 {¶ 3} Marzett claimed that, during the course of the evening and while the two were alone in the car, Donald showed him a gun and suggested that they rob Brooks. Marzett refused, Brooks returned to the car, and the group continued to drive around the neighborhood. Shortly thereafter, Andrews asked to be dropped off at home, as did Marzett. Brooks, however, asked Marzett to stay, apparently to avoid being alone with Donald; Marzett agreed, laid down in the backseat, and dozed off.
 {¶ 4} Sometime around 2:00 a.m., Marzett claimed the car was stopped in Brooks' driveway and he was awakened by the sound of Donald striking Brooks in the face with a gun.[3] He pretended to be sleeping and said he heard Donald demand that Brooks give him everything or he would kill him. Apparently Brooks complied, begged for his life, and offered to give him more from his home. When the two got out of the car and headed for Brooks' front door, Marzett purportedly ran.
 {¶ 5} Marzett claimed he looked back at the house, saw Brooks push Donald off of the porch, jump over the bannister and into the driveway, and then he heard a gunshot. Marzett ran until he stopped at the front yard of his next door neighbor, Reuben Terry. Terry, who said he was awake because he was checking on his son, came out of the house and asked what was wrong. Marzett explained what he had witnessed, and the two began walking to Brooks' house to investigate.
 {¶ 6} On their way, they saw Brooks' car abandoned in the street, and they got in and drove it to Brooks' house to look for him. Although they searched some portions of his backyard, they did not.
 {¶ 7} find him, so they drove to two other locations he was known to frequent. They eventually gave up their search and returned to Terry's home around 2:30 a.m.
 {¶ 8} Marzett claimed he awoke around noon the next day and told his mother about the previous night's events. She drove him to Brooks' home to search in the daylight and, when they failed to find him, they knocked on the back door but no one answered, so they returned home. Mrs. Marzett phoned Brooks' mother to tell her about what her son had said and to ask her to look around her backyard. Brooks' body was found behind the house near the driveway. When the police came to Brook's house to investigate, Marzett gave a statement implicating Donald, who was then arrested.
 {¶ 9} In his only statement to police, Donald stated that Marzett approached him about robbing Brooks and, after he refused to help him, Marzett said he was joking. He then claimed that when they arrived at Brooks' house, he saw Marzett argue with Brooks and saw him point a gun at Brooks' head. He decided not to approach them because things seemed to calm down but, as he returned to the car, he heard a gunshot and saw Marzett running from the back of the house toward him and telling him that he fired the gun, but did not hit Brooks.
 {¶ 10} Donald and Marzett were indicted in December 2001 on one count of aggravated murder[4] and one count of aggravated robbery,[5] each with one-[6] and three-year[7] firearm specifications and, shortly thereafter, a warrant was issued for Donald's arrest for a parole violation in an unrelated federal case.[8]
 {¶ 11} Donald was found guilty on both counts and was sentenced to concurrent sentences of twenty years to life in prison for aggravated murder, and eight years for aggravated robbery, with firearm specifications to run prior and consecutive to both counts. His assignments of error are set forth in the appendix to this opinion.
I. SPEEDY TRIAL
 {¶ 12} In his sole assignment of error under Case No. 83947, and in his first two assignments of error in Case No. 81570, Donald challenges his conviction on speedy trial grounds and asserts that he was not brought to trial within the statutorily proscribed period, and that a failure of service of a federal warrant prevented the tolling of the triple-count provision under R.C. 2945.71(E).
 {¶ 13} The right to a speedy trial is guaranteed by theSixth Amendment to the U.S. Constitution, and is made obligatory on the states by the Fourteenth Amendment.[9] Failure to adhere to the speedy trial statutory time limits requires reversal.[10] R.C. 2945.71(C)(2) mandates that a person charged with a felony must be brought to trial within 270 days of his arrest, but under 2945.71(E), if a person is held in jail in lieu of bail, then each day is to be counted as three days, otherwise known as a "triple count." The triple count provision, however, only applies when the person is being held in jail solely on the pending case.[11]
 {¶ 14} In the instant case, the judge found that the triple count did not apply because Donald was being held on both State charges, along with a federal holder for a parole violation. Donald claims that, because he was not properly served with notice of the federal holder, the triple-count provision is applicable and he was therefore denied his right to a speedy trial.
 {¶ 15} The requirement that a detainee be served with the underlying notice of charge is inapplicable to the parole holder situation.[12] Where the State shows that there is a valid parole or probation holder, the pertinent speedy trial statutory time-frame is tolled as long as the defendant is not being held solely on the charge in the pending case.[13] A parole violation is a separate offense and does not relate to the pending charge as contemplated by R.C. 2945.71(E).[14] On December 14, 2001, a federal warrant was issued for Donald's arrest for parole violations and, three days later, he was arrested. Almost two weeks later,[15] he was booked by the Cuyahoga County Sheriff on the charges arising out of Brooks' death. The formal federal detainer was not issued until January 10, 2002, at which time Donald was being held on both parole violations and on the indictment. Because he was not being held solely on the charges against him in the instant case, the triple-count provision is inapplicable.
 {¶ 16} But, Donald claims that service on him was required to effectuate a valid holder regardless of his status as a parole violator, and cites to State v. Rembert[16] where this court held that an unissued hold order did not toll the triple-count provisions of the speedy trial statute. Rembert,
however, involved a bench warrant for a traffic violation, not a parole violation, which resulted in a federal hold order, as is the case here. "The existence of a valid probation violation holder serves to prevent the triggering of the triple-count provision."[17]
 {¶ 17} Regardless of the inapplicability of the triple-count provision, and that service was not required, the State still bears the burden of proof that Donald was brought to trial within speedy trial guidelines. Although he claims that the State failed to meet this burden and that the judge erred in denying his motion to dismiss on these grounds, R.C. 2945.72 provides several exceptions to the 270-day rule; specifically, R.C. 2945.72(H) provides that "the period of any reasonable continuance granted on the accused's own motion." Donald, nonetheless, contends that continuances of pretrials do not toll the time frame for a speedy trial and, even if they did, there was no delay since the judge sua sponte continued the trial date to April 17, although it was originally scheduled for March 11.
 {¶ 18} On January 10, 2002, Donald requested a continuance until January 24, 2002. On January 23, 2002, Donald moved for a second continuance until January 31, 2002. On the date of this newly scheduled hearing, he requested a third continuance until February 12, 2002. Again, on February 12, 2002, he requested another continuance until February 22, 2002. Two months later, on April 17, 2002, he waived his right to a speedy trial to July 15, 2002. Moreover, in State v. Gowe,[18] this court held that pretrial continuances at a defendant's request toll the speedy trial time.
 {¶ 19} As recognized by the state, Donald was in jail for 121 days before he waived his right to a speedy trial, and 42 days were tolled due to his requests for continuances. Therefore, only 79 days were credited to Donald before he waived his right to a speedy trial. Any claim for ineffective assistance of counsel is moot because R.C. 2945.71 was not violated. The sole assignment of error under Case No. 83947 lacks merit.
 {¶ 20} II. Ineffective Assistance of Counsel
 {¶ 21} As an extension to his claims on speedy trial grounds, Donald additionally claims that counsel was ineffective for his failure to raise not only a colorable, but a winning claim on speedy trial grounds.
 {¶ 22} To establish the grounds for an ineffective assistance of counsel claim, the United States Supreme Court has held that Donald must show that (1) his lawyer's performance was deficient, and (2) that deficient performance resulted in prejudice.[19] The Ohio Supreme Court adopted a similar standard in State v. Lytle[20] by stating:
{¶ 23} "When considering an allegation of ineffectiveassistance of counsel, a two-step process is usually employed.First, there must be a determination as to whether there has beena substantial violation of any of defense counsel's essentialduties to his client. Next, and analytically separate . . . theremust be a determination as to whether the defense was prejudicedby counsel's ineffectiveness."
 {¶ 24} The prejudice arms of both Strickland and Lytle is a "but for" standard, i.e., but for the lawyer's deficient performance, the outcome of the trial would have been different.[21] This court must look to the totality of the circumstances, and not isolated instances of an allegedly deficient performance.[22] "Ineffective assistance does not exist merely because counsel failed `to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'"[23] Donald must therefore show that his trial lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from that deficient performance.[24]
 {¶ 25} When trial began in May 2002, Donald was within the time period of his executed waiver of a speedy trial and there was no basis for his lawyer to pursue such a claim.
 {¶ 26} Further, and because of our disposition on Donald's assignments of error finding that Donald's speedy trial claims were not violated, counsel was not ineffective for failing to raise such claims. His first and second assignments of error in Case No. 81570 lack merit.
 {¶ 27} Witness Testimony
 {¶ 28} After conducting a voir dire of Marquis Andrews, the brother of Marcus Andrews, the judge determined his testimony about his brother being pressured to testify was hearsay and refused to allow it at trial. Donald claims he was prejudiced by this exclusion because it was instrumental in showing Marcus Andrews' bias in favor of the State.
 {¶ 29} The substance of Marquis Andrews' testimony regarded an alleged phone conversation he overheard between his brother and Marzett's mother in which she pressured him to testify. Donald claims that, since this testimony related to Marcus Andrews' expressed concern over pressure from Mrs. Marzett to testify for the State against him,[25] he was entitled to prove the bias via extrinsic evidence in the form of Marquis Andrews' testimony.[26]
 {¶ 30} The State contends that the excluded testimony would have added little to the defense, and that Marcus Andrews' own testimony can explain his reluctance to testify, as he repeatedly expressed his dislike of the police, and told the jury that he is related to both Donald and Marzett.
 {¶ 31} The decision to admit or exclude evidence at trial is a matter which lies within the sound discretion of the judge.[27] Although Donald cites U.S. v.Valenzuela-Bernal,[28] in an effort to prove that he is only required to demonstrate that such testimony would have assisted his defense to show a violation of due process, underValenzuela-Bernal, he must make some showing that Marquis Andrews' testimony would have been both material and favorable to the defense,[29] a showing that he cannot make, particularly in light of the fact that both purported parties to the call, Mrs. Marzett and Marcus Andrews, were both available to testify.
 {¶ 32} Further, the purpose of the defense in offering Marquis Andrews' testimony was to show that Mrs. Marzett pressured his brother to testify in a manner that was beneficial to her son. What Donald neglects to mention, however, is that Marcus Andrews had previously testified and not one question was asked of him regarding such a conversation. The judge properly rejected Marquis Andrews' testimony on hearsay grounds. When the source of the hearsay is available, there is no excuse for not asking him these same questions. This third assignment of error lacks merit.
 {¶ 33} Prosecutorial Misconduct
 {¶ 34} Donald contends that the cumulative effect of statements made by the prosecutor deprived him of a fair trial. First, he claims that the prosecutor was trying to subvert the truth by placing words in Marzett's mouth, by trying to intimidate Humphrey, who testified for the State, and by trying to "cause confusion where there is none."
 {¶ 35} The conduct of a prosecuting attorney cannot be the grounds for error unless the conduct deprived the defendant of a fair trial.[30] The Ohio Supreme Court in State v.Smith,[31] held that the test for prosecutorial misconduct is whether the remarks were improper, and if so, whether the accused's rights were materially prejudiced.
 {¶ 36} Donald claims that the prosecutor improperly expressed his personal belief in Donald's guilt, by stating during closing that he "would not rise to the bait * * * [that] I'm prosecuting an innocent guy * * * because I know I don't do that," and by claiming that Donald's police statement contained a number of lies. Closing arguments, however, are to be viewed in their entirety to determine whether the disputed remarks were prejudicial,[32] and although Donald has supplied this court with an abbreviated version of the prosecutor's closing, the relevant portion quoted in its entirety states:
{¶ 37} "Folks, I'm not going to rise to the bait that hisobvious inexperiences has caused him to throw out. Telling youthat, as the prosecutor I'm prosecuting an innocent guy, and Ishould know better basically and that detectives are building acase against an innocent guy, and should know better.
 {¶ 38} I'm not going to rise to that bait because I know Idon't do that."
 {¶ 39} A review of this entire text shows that the prosecutor was not attempting to insert his personal belief, but rather it shows his response to Donald's prior insinuations. Moreover, Donald has failed to show how the prosecutor's commentary prejudiced him and deprived him of a fair trial.
 {¶ 40} Donald also objects to other closing statements: "[T]he defendant talked with the police, and he gave them a two-page written statement, signed it, and it contains a number of lies," and, when referring to Donald's actions after he was arrested, that he, "starts ostensibly cooperating with the police but he only cooperates to a certain extent, starts telling them lies about whose [sic] driving the car and a number of other factors, including he starts talking about James Marzett being the shooter."
 {¶ 41} Although the prosecution is entitled to a certain degree of latitude in closing statements[33] and, although statements about Donald's veracity are questionable, the mere utterance of these statements does not rise to the level of material prejudice required by the Ohio Supreme Court.
 {¶ 42} In both instances, the prosecutor then outlined the inconsistencies in Donald's statements to police, pointing out that while the statement claims Marzett was driving, Marzett consistently claims that Brooks was driving the vehicle the entire night, a contention fully supported by Andrews. The prosecutor also points out that Donald's statement claims Marzett was the shooter, yet no one saw him with a gun either before, during, or after Brooks' death, and no evidence other than Donald's statement alleging Marzett's guilt was offered at trial. This fourth assignment of error lacks merit.
 {¶ 43} Sufficiency of the evidence/manifest weight of the evidence.
 {¶ 44} Donald submits that the evidence was both insufficient to sustain his convictions, and his conviction is against the manifest weight of the evidence. Whether the evidence is legally sufficient to sustain a verdict is a question of law.[34]
According to Crim.R. 29.
{¶ 45} "The court on motion of a defendant or on its ownmotion, after the evidence on either side is closed, shall orderthe entry of a judgment of acquittal of one or more offensescharged in the indictment, information, or complaint, if theevidence is insufficient to sustain a conviction of such offenseor offenses. * * *"
 {¶ 46} Whether phrased in terms of a Crim.R. 29 motion, or in terms of a sufficiency of the evidence argument, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[35]
 {¶ 47} When reviewing a challenge to the weight of the evidence, we review the entire record and assess the credibility of witnesses, the quality of evidence, and the inferences that can reasonably be drawn from the evidence,[36] in order to determine "whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction."[37] Manifest weight review allows the reviewing court to act as a thirteenth juror, and to remand for a new trial if it appears that the jury misconstrued the evidence, drew unreasonable inferences, or otherwise "lost its way" in rendering its verdict.[38]
 {¶ 48} Under the manifest weight test, a new trial should not be ordered unless the evidence weighs so heavily against conviction that the verdict appears unjust.[39] While this is a stringent standard, a reviewing court is not required to "defer" to a jury's factual determinations. If our broad review of the record shows that the jury's conclusion was reasonable, the verdict will be affirmed as not against the weight of the evidence. If, however, the verdict is based on evidence that lacks credibility or upon unreasonable inferences, it must be remanded for a new trial.[40]
 {¶ 49} Aggravated murder, as defined in pertinent part by R.C. 2903.01, provides that, "no person shall purposely, and with prior calculation and design, cause the death of another * * *." R.C. 2911.01(A)(1) defines aggravated robbery and states in pertinent part that, "no person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
 {¶ 50} Dianne Kovach testified that, between 11:00 p.m. and midnight on December 10, 2001, she rented her car to Brooks for $15 in cash and a rock of crack cocaine. Both Marzett and Andrews testified that, shortly thereafter, Brooks and Donald, who did not normally hang out together, were in that car when they joined them. Although Donald claims that Marzett was driving the car, both Andrews and Marzett testified that Brooks drove the entire night, and Donald stayed in the passenger seat while they smoked in the back seat.
 {¶ 51} Andrews testified that during one of the stops, Donald told him that he wanted to rob Brooks and showed him a .44 caliber snub nose revolver, a statement which police found significant because the type of gun used was never made public. Andrews' testimony was also consistent with the testimony of Humphrey who testified that, the night before the murder, Donald showed him a.44 caliber snub nose gun and asked him if he was interested in robbing someone. He also testified that the day after the murder, Donald told him that he shot someone in the head over by Miles Road while the victim was running away, again, a statement supported by the laboratory results which concluded that Brooks was killed by a single shot in the back of the head by a .44 caliber gun.
 {¶ 52} Further testimony from both Marzett and Andrews indicated that on the night of the murder Brooks was carrying a significant amount of cash and a small .22 caliber gun, yet his body was found without any money, any gun, and his jacket had been removed and his pants were pulled down in a way that was indicative of a robbery.
 {¶ 53} Donald made a statement to police claiming that it was Marzett who picked him up, alone, in the Kovach automobile, they drove around smoking marijuana, and that Marzett asked him if he wanted to rob Brooks. When they picked up Brooks, Donald claimed he moved to the back seat, but he never accounted for a fourth person being in the car, a scenario that was not supported by any other trial testimony or any other evidence.
 {¶ 54} Based on the evidence submitted at trial: that Donald displayed a gun of the same caliber used in Brooks' murder, he showed the same gun to Andrews the night of the murder, he indicated an intention to rob Brooks, and that he specifically told Humphrey that he thought he killed someone, there was sufficient evidence to support Donald's convictions for both aggravated murder and aggravated robbery. We cannot say that his convictions are against the manifest weight of the evidence. Donald's fifth and sixth assignments of error lack merit.
 {¶ 55} Post-Release Control.
 {¶ 56} Donald correctly claims that the judge never discussed either the possibility or probability of the imposition of postrelease control during sentencing, yet he nonetheless imposed it as part of Donald's sentence via his journal entry.
 {¶ 57} Under R.C. 2967.28(B)(2), Donald's conviction for a first degree felony mandates a sentence of five years of post-release control. This post-release control, however, must be properly stated on the record, and a judge has no authority to impose it through a journal entry outside of the defendant's presence.[41] The Ohio Supreme Court has held that a judge must inform a defendant at the time of his sentencing hearing that mandatory post-release control is part of his sentence.[42] The Ohio Supreme Court recently held inState v. Jordan that.
{¶ 58} "When a trial court fails to notify an offender aboutpostrelease control at the sentencing hearing but incorporatesthat notice into its journal entry imposing sentence, it fails tocomply with the mandatory provisions of R.C. 2929.19(B)(3)(c) and(d), and, therefore, the sentence must be vacated and the matterremanded to the trial court for resentencing."[43]
 {¶ 59} For these reasons, we affirm Donald's conviction, but vacate his sentence in Case No. 81570 and remand for resentencing.
APPENDIX A:
 ASSIGNMENTS OF ERROR
 Case No. 81570
 "I. MR. DONALD WAS DENIED HIS RIGHTS TO EFFECTIVE ASSISTANCEOF COUNSEL GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIOCONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THEUNITED STATES CONSTITUTION BY VIRTUE OF HIS COUNSEL'S FAILURE TOMOVE TO DISMISS THE INSTANT CASE FOR WANT OF SPEEDY TRIAL.
 II. THE TRIAL COURT PLAINLY ERRED IN VIOLATION OF MR. DONALD'SDUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THEUNITED STATES CONSTITUTION, AND IN VIOLATION OF HIS SPEEDY TRIAL RIGHTSUNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHENIT FAILED TO DISMISS THE INSTANT CASE FOR WANT OF A SPEEDYTRIAL.
 III. THE TRIAL COURT DENIED MR. DONALD HIS CONSTITUTIONALRIGHTS GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIOCONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THEUNITED STATES CONSTITUTION WHEN THE TRIAL COURT DID NOT ALLOW AMATERIAL WITNESS TO TESTIFY FOR THE DEFENSE.
 IV. MR. DONALD WAS DENIED HIS RIGHT TO TRIAL BY JURY UNDER THESIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND FEDERAL DUEPROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATESCONSTITUTION WHEN THE PROSECUTOR MADE AD HOMINUM [SIC] ATTACKS ONCOUNSEL, INJECTED HIS PERSONAL BELIEF THAT MR. DONALD WAS GUILTY,AND IMPROPERLY REFERRED TO MR. DONALD'S STATEMENT AS A LIE.
 V. THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THEEVIDENCE.
 VI. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN EITHERCONVICTION.
 VII. THE TRIAL COURT ERRED IN IMPOSING POST-RELEASE CONTROL ASPART OF ITS JOURNALIZED SENTENCE WHEN THE TRIAL COURT DID NOTDISCUSS POST RELEASE-CONTROL AT SENTENCING."
 CASE 83947
 "I. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENTWITHOUT ANY EVIDENCE THAT THE FEDERAL DETAINER WAS ACTUALLYSERVED ON MR. DONALD."
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., concurs.
 Kilbane, J.*
*Judge Anne L. Kilbane participated in this decision prior to her death on November 23, 2004, which occurred before the release of State v. Jordan, 104 Ohio St.3d 21, 2004-Ohio-6085.
(The Ohio Constitution requires the concurrence of at least two judges when rendering a decision of a court of appeals. Therefore, this announcement of decision is in compliance with constitutional requirements. See State v. Pembaur (1982),69 Ohio St.2d 110.)
[1] R.C. 2903.01.
[2] R.C. 2911.01.
[3] The coroner discovered no facial bruising, nor do the photos depict such bruising.
[4] R.C. 2903.01.
[5] R.C. 2911.01.
[6] R.C. 2941.141.
[7] R.C. 2941.145.
[8] Marzett pleaded guilty to manslaughter and agreed to cooperate as part of the plea agreement.
[9] Klopfer v. North Carolina (1967), 386 U.S. 213,87 S.Ct. 988, 18 L.Ed2d 1; Section 10, Article I, Ohio Constitution. See, also, State v. Butler (1969), 19 Ohio St.2d 55, 57,249 N.E.2d 818.
[10] R.C. 2945.73.
[11] State v. McDonald (1976), 48 Ohio St.2d 66,357 N.E.2d 40, paragraph one of the syllabus.
[12] State v. Keyse, Lake County App. No. 12-122 at 9.
[13] State v. Brown, 64 Ohio St.3d 476, 478, 1992-Ohio-96,597 N.E.2d 97.
[14] Id.
[15] Dec. 27, 2001.
[16] (Oct. 19, 1989), Cuyahoga App. No. 55654.
[17] State v. Hubbard (1995), 104 Ohio App.3d 443, 446,662 N.E.2d 394, citing State v. Thompson (1994),97 Ohio App.3d 183, 646 N.E.2d 499.
[18] (1983), 13 Ohio App.3d 358, 359, 469 N.E.2d 909.
[19] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674.
[20] (1976), 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623.
[21] State v. Crickon (1988), 43 Ohio App.3d 171, 175,540 N.E.2d 287.
[22] State v. Malone (December 13, 1989), Montgomery App. No. 10564.
[23] Id., quoting Smith v. Murray (1986), 477 U.S. 527, 535,106 S.Ct. 2661, 91 L.Ed.2d 434.
[24] State v. Bradley (1989), 42 Ohio St.3d 136, 143,538 N.E.2d 373, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258.
[25] Evid. R. 401.
[26] Evid. R. 616.
[27] State v. Hall (April 26, 2001), Cuyahoga App. No. 77384;Felden v. Ashland Chem. Co. (1993), 91 Ohio App.3d 48, 59,631 N.E.2d 689.
[28] (1982), 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193.
[29] U.S. v. Valenzuela-Bernal, 458 U.S. at 867.
[30] State v. Maurer (1984), 15 Ohio St.3d 239, 266,473 N.E.2d 768.
[31] (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883.
[32] State v. Mann (1993), 93 Ohio App.3d 301, 312,638 N.E.2d 585.
[33] State v. Liberatore (1982), 69 Ohio St.2d 583, 589,433 N.E.2d 561.
[34] See State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541.
[35] State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[36] State v. Lindsey, 87 Ohio St.3d 479, 483, 2000-Ohio-465,721 N.E.2d 995.
[37] State v. Getsy, 84 Ohio St.3d 180, 193, 1998-Ohio-533,702 N.E.2d 866.
[38] Lindsey, 87 Ohio St.3d at 483.
[39] Id.
[40] State v. Warren, Cuyahoga App. No. 83709, 2004-Ohio-4477.
[41] State v. Davis, Cuyahoga App. No. 83033, 2004-Ohio-1908.
[42] Woods v. Telb, 89 Ohio St.3d 504, 2000-Ohio-171,733 N.E.2d 1103, paragraph two of the syllabus.
[43] 104 Ohio St.3d 21, 2004-Ohio-6085, paragraph two of the syllabus.